**THE MAGLIONE FIRM, PC**
M. Anthony Barsimanto, Esq. 047562011
369 West Farms Road
Farmindale, New Jersey 07727
(973) 645-0777

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

-----------------------------------------------------------X

ALEXANDER SHAPOROV,                                    Docket No.:

                    Plaintiff,

                                       **COMPLAINT**

       v.

STATE OF NEW JERSEY; PALISADES INTERSTATE
PARKWAY COMMISSION; PALISADES INTERSTATE
PARKWAY POLICE DEPARTMENT;
PIPPD P.O. MATTHEW LEVINE, BADGE NO. 366; PIPPD
SERGEANT GREGORY D. KIMBRO JR, BADGE NO. 368;
PIPPD P.O TIMOTHY CONBOY, BADGE NO. 393;
PIPPD P.O PETER WOJCIK, BADGE NO. 406;
PIPPD P.O. SCOTT BILOTTI, BADGE NO. 413;
PIPPD DOE POLICE OFFICERS # 1-10;
PIPPD SUPERVISOR DOE POLICE OFFICERS # 1;
the individual defendant(s) sued individually and in their official
capacities,

                    Defendants.

-----------------------------------------------------------X

**COMPLAINT**

      Plaintiff, ALEXANDER SHAPOROV, ("Plaintiff"), by and through his attorneys

IGBOKWE PLLC, hereby files this complaint against, STATE OF NEW JERSEY;

PALISADES INTERSTATE PARKWAY COMMISSION; PALISADES INTERSTATE

PARKWAY POLICE DEPARTMENT; PIPPD P.O. MATTHEW LEVINE; PIPPD

SERGEANT GREGORY D. KIMBRO JR, BADGE NO. 368; PIPPD P.O TIMOTHY

CONBOY, BADGE NO. 393; PIPPD P.O PETER WOJCIK, BADGE NO. 406; PIPPD P.O.

SCOTT BILOTTI, BADGE NO. 413; PIPPD DOE POLICE OFFICERS # 1-10; and  PIPPD

SUPERVISOR DOE POLICE OFFICERS # 1; individually in their position as police officers employed by Palisades Interstate Parkway Police Department, and, (hereinafter, collectively "Defendants"), respectfully alleges as follows:

## NATURE OF THE ACTION

1.  This is an action for deprivation, committed by Defendants while acting in concert and under color of state law, of Plaintiff's civil rights, liberties, and immunities as guaranteed to him by reason of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. This Court is authorized to grant Plaintiff relief under 42 U.S.C. §§ 1983 and 1988 and his pendant State Law claims.

## JURISDICTION

2.  Jurisdiction in this matter is invoked in accordance with 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Plaintiff further invokes the supplemental jurisdiction of the Court to hear and decide claims arising out of the pendant state claims pursuant to 28 U.S.C. § 1376(a).

## VENUE

3.  Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b) because all of the events and omissions giving rise to Plaintiff's claims occurred within Bergen County in the District of New Jersey; the actual place of employment of all of the individual Defendants is in Bergen County, the District of New Jersey, and Bergen County is within the jurisdiction of the District of New Jersey.

## PARTIES

4.  Plaintiff, ALEXANDER Shaporov (hereinafter "Plaintiff" or "Shaporov") is a resident of the United States who lives within the State of New York.

5.   Defendant, THE STATE OF NEW JERSEY, is named herein pursuant to principles of vicarious liability/respondeat superior and Wright v. State, 169 N.J. 422 (2001). THE STATE OF NEW JERSEY promulgates official policies, customs, and practices concerning the activities, hiring, training, and supervising of law enforcement officers at PALISADES INTERSTATE PARWAY POLICE DEPARTMENT.

6.   Defendant, PALISADES INTERSTATE PARK COMMISSION (hereinafter, "PIPC"), is a joint municipal instrumentality of the States of New Jersey and New York, duly existing by reason of and pursuant to the laws of the States of New Jersey and New York, with offices at One Alpine Approach Road, Alpine, New Jersey 07620. Upon information and belief, PIPC is responsible for overseeing the defendant PALISADES INTERSTATE PARKWAY POLICE DEPARTMENT.

7.   Defendant, PALISADES INTERSTATE PARKWAY POLICE DEPARTMENT (hereinafter, "PIPPD") is a subdivision and/or agency of Defendant PIPC and has an office at One Alpine Approach Road, Alpine, New Jersey 07620.

8.   Defendant, PIPPD MATTHEW LEVINE BADGE #366 (hereinafter, "PO Levine") is a police officer who is being sued in his official and individual capacity and is an employee of Defendant PIPPD. At all relevant times described herein, PO Levine was acting under color of state law within the scope of his employment as a police officer employed by Defendant PIPPD.

9.   Defendant PIPPD SERGEANT GREGORY D. KIMBRO BADGE #362 (hereinafter, "Sergeant Kimbro") is a police sergeant who is being sued in his official and individual capacities  and is an employee of Defendant PIPPD. At all relevant times described herein, Sergeant Kimbro was acting under color of state law within the scope of his employment as a police sergeant employed by Defendant PIPPD.

10. Defendant PIPPD P.O TIMOTHY CONBOY, BADGE NO. 393 (hereinafter, "PO Conboy") is a police officer who is being sued in his official and individual capacities and is an employee of Defendant PIPPD. At all relevant times described herein, PO Conboy was acting under color of state law within the scope of his employment as a police officer employed by Defendant PIPPD.

11. Defendant PIPPD P.O PETER WOJCIK, BADGE NO. 406 (hereinafter, "PO Wojcik") is a police officer who is being sued in his official and individual capacities and is an employee of Defendant PIPPD. At all relevant times described herein, PO Wojcik was acting under color of state law within the scope of his employment as a police officer employed by Defendant PIPPD.

12. Defendant PIPPD P.O. SCOTT BILOTTI, BADGE NO. 413 (hereinafter, "PO Bilotti") is a police officer who is being sued in his official and individual capacities and is an employee of Defendant PIPPD. At all relevant times described herein, PO Bilotti was acting under color of state law within the scope of his employment as a police officer employed by Defendant PIPPD.

13. Defendant, PIPPD DOE OFFICERS #1-10 (fictitiously named) (hereinafter, collectively "Doe Officers") are police officers who are being sued in their official and individual capacities and are employed by Defendant PIPPD. At all relevant times described herein, Doe Officers were acting under color of state law within the scope of their employment as police officers employed by Defendant PIPPD.

14. Defendant, PIPPD SUPERVISOR DOE OFFICERS #1-10 ("Supervisor Doe Officer # 1") is a police officer being sued in their official and individual capacities and is employed by Defendant PIPPD. At all relevant times described herein, Supervisor Doe Officer # 1 was acting under color of state law within the scope of his/her employment as a police officer employed by Defendant PIPPD.

**NATURE OF THE CASE**

15. This is an action seeking recovery for deprivation of Plaintiff Shaporov's civil rights guaranteed to him under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution committed by the above-named municipal Defendants.

16. Plaintiff bases this action upon his unlawful arrest and illegal seizure of person and property by various members of Defendant PIPPD on March 3, 2020, as well as the subsequent malicious prosecution caused by the unlawful arrest of Plaintiff that ended with all charges being dismissed in favor of Plaintiff.

**STATEMENT OF RELEVANT FACTS**

17. Plaintiff Shaporov is a 38-year-old male with a disabled left hand, and is a United States citizen who currently resides in the county of Kings, State of New York.

18. Because he was disabled, Defendants falsely arrested and maliciously prosecuted Plaintiff Shaporov for crimes which Plaintiff Shaporov did not commit, and for which there was no probable cause to charge and prosecute Plaintiff.

19. On March 3, 2020, Plaintiff Shaporov was driving in Bergen County, New Jersey, in an official State of New York government issued vehicle, on his way to training in Albany, NY, associated with his job as a New York State Investigator.

20. At approximately 11:00 a.m., Plaintiff was driving north on the Palisades Interstate Parkway in Alpine, New Jersey, on his way to Albany, when his car was pulled over by PO Levine.

21. After Plaintiff stopped his vehicle, Defendant PO Levine walked over to Plaintiff's window and requested to see Plaintiff's identification. Plaintiff complied without objection and provided his information and identification.

22. Defendant PO Levine told Plaintiff that he was pulled over for having tinted windows in violation of N.J.S.A. 39:3-75.1. The reason that PO Levine provided to Plaintiff was mere pretext to conceal the fact that Plaintiff had been pulled over for no lawful reason as the vehicle that Plaintiff was driving was a State of New York government issued vehicle with lawful levels of tint.

23. Plaintiff explained to Defendant PO Levine that he was driving an official New York State government issued vehicle and that Plaintiff was a New York State Investigator driving to Albany for training. Plaintiff also provided PO Levine with a copy of his official New York State employee identification.

24. During this exchange Defendant PO Levine gave Plaintiff a look as if he did not believe Plaintiff's credentials. Defendant PO Levine then made a motion with his to hand to place it on his service revolver in a purposeful show of force and authority. This caused Plaintiff to become afraid.

25. When Defendant PO Levine saw Plaintiff's disability, he told Plaintiff he did not believe that Plaintiff was a New York State Investigator.

26. Defendant PO Levine took Plaintiff's NYS Investigator credentials and called for backup police units.

27. Defendants, Sergeant Kimbro, PO Conboy, PO, Wojcik, PO Bilotti, and Doe Officers arrived at the location.

28. PO Levine instructed Plaintiff to step out of the vehicle, and Plaintiff complied without objection.

29. After Plaintiff came out of the vehicle, PO Levine patted him down without any legal justification.

30. Plaintiff's disability was the motivating factor behind the officers' decision to illegally search and unlawfully detain Plaintiff.

31. Defendants lacked probable cause to pull over Plaintiff for the tint on his vehicle's windows as a violation of N.J.S.A. § 39:3-75.1, and failed to conduct any field tests to substantiate their claim after pulling Plaintiff over.

32. Plaintiff was arrested, handcuffed, and placed in the back of a patrol car.

33. Plaintiff was placed in the back of Defendant PO Levine's patrol car under very hot conditions with the windows up and vehicle air conditioning off. Defendant PO Levine left Plaintiff in the vehicle under this condition for an extended period.

34. Defendant PO Levine drove Plaintiff to the Palisades Interstate Park Police Department for arrest processing.

35. Plaintiff was charged with violating N.J.S.A.§ 2C:28-8B, Impersonating a Law Enforcement Officer.

36. Plaintiff's disability was the motivating factor behind the defendant police officers' decision to arrest him that day.

37. On the way to the Police Station, Plaintiff was not properly secured into a seatbelt, and was unable to hold himself from sliding in the back of the vehicle causing further fear and injury.

38. Upon arrival at the Police Department, Plaintiff was brought inside where Plaintiff was interviewed and continued to hear the police officer defendants make fun of Plaintiff's disability, commenting that it would be impossible for Plaintiff to hold a firearm with his disabled hand.

39. Defendant PO Levine fabricated probable cause to falsely implicate Plaintiff in criminal activity.

40. At all times, Plaintiff was cooperative throughout his encounter with the defendant officers. Despite his credible and true claim of being a NYS Investigator, and even though no criminality by the Plaintiff had taken place, Defendants conspired together to falsely complete official documentation, and filed fabricated charges against Plaintiff, despite not having evidence for said charges.

41. Plaintiff's disability was the motivating factor behind the decision to discriminate against Plaintiff and charge Plaintiff with a crime for which there was no probable cause.

42. On March 3, 2020, Defendants Sergeant Kimbro and Supervisor Doe Officer #1, who were acting in a supervisory capacity of Defendants, PO Levine, PO Conboy, PO Wojcik, PO Bilotti, and Doe Officers, were aware of Defendants PO Levine PO Conboy, PO Wojcik, PO Bilotti, and Doe Officers' misconduct in falsifying documents and fabricating Plaintiff's involvement in the charged crimes, but failed to take steps to intervene to prevent this violation of Plaintiff's rights, despite having the opportunity to do so.

43. If Defendants Sergeant Kimbro and Supervisor Doe Officer #1 did not directly participate in framing Plaintiff for a crime he did not commit, Defendants Sergeant Kimbro and Supervisor Doe Officer #1 were aware that Defendants PO Levine, PO Conboy, PO Wojcik, PO Bilotti, and Doe Officers were engaged in a pattern of falsely charging and arresting innocent people, fabricating evidence and falsifying official documents to support these false arrests, hiding

exculpatory evidence, and other misconduct, and did nothing to prevent or stop these violations in general and specifically in the case of Plaintiff.

44. In furtherance of their illegal actions, Defendant PO Levine, pursuant to a conspiracy, falsely and maliciously told the Palisades Interstate Parkway Municipal Prosecutors Office that Plaintiff had committed various crimes, and forwarded the Interstate Parkway Municipal Prosecutors Office fabricated and falsely created evidence linking the Plaintiff to various crimes including but not limited to impersonation of a law enforcement officer.

45. The individual defendants were in possession of exculpatory evidence including but not limited to Plaintiff's New York State official badge and identification which proved Plaintiff's innocence and contradicted the criminal charges.

46. Defendants PO Levine, and/or other police officer defendants signed an accusatory instrument and other supporting documents to advance the malicious prosecution of Plaintiff, and Defendants Sergeant Kimbro and Supervisor Doe Officer #1 approved the charges allowing the prosecution to move forward.

47. Despite the fact Defendants PO Levine, PO Conboy, PO Wojcik, PO Bilotti, and Doe Officers lacked any reasonable basis or probable cause to believe that Mr. Shaporov had committed any crime or offense, On March 23, 2020, Plaintiff was required to make a mandatory appearance on at the Court of the Palisade Interstate Park where the Palisades Interstate Parkway Municipal Prosecutor presented an official criminal complaint against Plaintiff charging Plaintiff with various crimes including impersonating a law enforcement officer.

48. Plaintiff was arraigned under said criminal complaint.

49. Plaintiff was prosecuted for allegedly impersonating a law enforcement officer in violation of N.J.S.A. 2C:28-8B.

50. The prosecution of Plaintiff was initiated with malice, and without any legal basis to do so.

51. On October 20, 2020, because the case had no merit and had been a frame up from the beginning, the Palisades Interstate Parkway Municipal Prosecutor finally dismissed the criminal charge of Impersonating a Law Enforcement Officer on the criminal complaint against Plaintiff, in his favor.

52. On October 20, 2020, when the charges related to this claim were dismissed, Plaintiff was charged with a new infraction of a lane changing traffic offense, which was not part of his original charge, and a non-arrestable offense.

53. Plaintiff was pressured to accept this charge in order to cover up and conceal the unlawful arrest and prosecution of Plaintiff.

54. As a result of the malicious prosecution, Plaintiff was required to pay for the services of a criminal defense attorney at a substantial cost to him.

55. Pursuant to the New Jersey Tort Claims Act, Plaintiff served Notices of Claim upon the State of New Jersey and Palisades Interstate Parkway Police Department for personal injuries, false arrest, negligence, recklessness, unlawful search and seizure, failure to protect, deliberate indifference, intentional and negligent infliction of emotional distress, harassment, and gross negligence within the 90-day statutory period, giving Notice of these claims to the extent required by law.

56. As of the date of this Complaint, Defendants have failed to resolve any of the disputes alleged in the Notice of Claim.

### FIRST CLAIM
### FALSE ARREST (1983)

57. Plaintiff repeats and re-alleges each and every allegation contained above with the same force and effect as if more fully set forth herein.

58. On or about March 3, 2020, Plaintiff Shaporov was intentionally detained and arrested by Defendants.

59. Following his arrest, Plaintiff Shaporov's property was unlawfully seized from his person.

60. The detention and arrest of Plaintiff by Defendants were conducted under color of state law within the purview of 42 U.S.C. § 1983 and within the scope of Defendants' employment by the PIPPD and PIPC.

61. Defendants arrested Plaintiff without an arrest warrant, search warrant, or probable cause that he committed any crime.

62. As a result of his illegal detention, Plaintiff's Fourth and Fourteenth Amendment rights and his rights under Article I, Sections 1 and 7 of the Constitution of the State of New Jersey were violated, and Plaintiff was unlawfully deprived of his liberty without legal justification.

63. Plaintiff's disability was the motivating factor behind the individual defendants' decision to arrest Plaintiff that day.

64. As a proximate result of Defendants' intentional and malicious actions, Plaintiff Shaporov was greatly humiliated, injured in his reputation and trade, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered physical and mental damages.

**SECOND CLAIM**
**42 U.S.C. § 1983 - FALSE IMPRISONMENT**

65. Plaintiff repeats and re-alleges each and every allegation contained above with the same force and effect as if more fully set forth herein.

66. The accusations and charges made against Plaintiff were false, predicated on Plaintiff's disability, and were an attempt to cover up the illegal actions of Defendants.

67. The false arrest of Plaintiff resulted in false imprisonment, as he was detained, in custody, and incarcerated for a considerable period of time.

68. Such false imprisonment was illegal and in violation of Plaintiff's rights as secured under the Fourth Amendment to the United States Constitution, Article I, Sections 1 and 7 of the Constitution of the State of New Jersey, 42 U.S.C. § 1983, and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2. Such actions were negligent, reckless, unreasonable, and unauthorized as Defendants had a duty to not falsely imprison Plaintiff.

69. Each of the individually named defendants involved in such illegal actions knew or had reason to know that such violations were occurring, and had a realistic opportunity to intervene to prevent such violations from occurring.

70. As a consequence of Defendants' wrongful actions, negligent behavior and violation of Plaintiff's constitutional rights, Plaintiff was deprived of his freedom for a considerable period of time, and thereby Defendants directly and proximately caused Plaintiff to suffer great humiliation, injury to his reputation and trade, to incur attorney's fees, associated legal expenses, and other special damages, and he has suffered physical and mental damages.

### THIRD CLAIM
### 42 U.S.C. SECTION 1983--UNREASONABLE AND EXCESSIVE FORCE

71. Plaintiff repeats and re-alleges each and every allegation contained above with the same force and effect as if more fully set forth herein.

72. By their actions, conduct and/or omissions, all of the Defendants named herein, acting under color of law, deprived Plaintiff of his constitutional rights to be free from excessive and unreasonable force, intentionally, maliciously and with deliberate indifference to human life used

physical force against Plaintiff and placed handcuffs on his wrists which were too tight, intentionally left Plaintiff in a hot patrol vehicle for an extended period of time with no ventilation, and failed to restrain Plaintiff by seatbelt before transporting Plaintiff in the patrol vehicle to the police station, causing injuries and damages including, but not limited to, physical injuries, pain and suffering, mental anguish, shock, fear, depression, anxiety, Post-Traumatic Stress Disorder, psychological injuries, psychological distress, and emotional distress (both intentional and negligent), and was otherwise injured herein requiring Plaintiff to undergo medical care/treatment therefore and further causing Plaintiff to incur, and to continue to incur damages and expenses which Plaintiff claims herein.

73. The individual defendants subjected Plaintiff to excessive, unnecessary and unreasonable force, without provocation, privilege, consent, excuse and/or justification.

74. Each defendant had the duty and the opportunity to protect Plaintiff from the unlawful actions of the other defendants, but failed to do so, thereby proximately causing Plaintiffs' injuries.

75. No reasonable police officer would have understood the foregoing conduct to be reasonable.

76. The aforesaid actions constituted a seizure of Plaintiff and violated his constitutional rights.

77. The aforesaid actions were objectively unreasonable.

78. At all times relevant herein, Plaintiff did not consent to Defendants having physical contact with him or committing the aforesaid acts, depriving the Plaintiff of his right to be free from unlawful conducts, to be free from excessive force and assault, to be free from unlawful

assault on to his person/body, to be free from false imprisonment/prosecution and to be free from unlawful discrimination/treatment due to his disability.

79. Defendants, acting under color of law, by their unlawful acts, conduct and omissions above detailed, deprived Plaintiff of his liberty, and subjected Plaintiff to restrictions of his freedom and otherwise deprived him of civil rights and liberties under the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Sections 1 and 7 of the Constitution of the State of New Jersey, as well as rights under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, including but not limited to his right to due process, his right not to be unreasonably seized, his right not to be prosecuted with the use of fabricated evidence, and his right not to be arrested or imprisoned without probable cause.

## FOURTH CLAIM
## 42 U.S.C. SECTION 1983--MALICIOUS PROSECUTION

80. Plaintiff Shaporov repeats and re-alleges each and every allegation contained above with the same force and effect as if more fully set forth herein.

81. On or about March 3, 2020, Defendant PO Levine signed and filed a complaint charging Plaintiff with crimes that he did not commit.

82. On or about March 28, 2020, Plaintiff was falsely arrested, charged, and arraigned on one count of Impersonating a Law Enforcement Officer pursuant to N.J.S.A. 2C:28-8B.

83. The prosecution of Plaintiff was initiated and continued by Defendants with malice and without any legal basis.

84. Plaintiff's disability was the sole factor behind the decision to arrest and maliciously prosecute Plaintiff.

85. At the time the prosecution was commenced, Defendants had knowledge that Plaintiff was innocent of the charges alleged against him.

86. As a result of the malicious prosecution, Plaintiff was required to pay for the services of a criminal defense attorney at a substantial cost to him.

87. As a result of the false and unlawful charge, Plaintiff was required to make multiple appearances in Court and travel interstate to attend each appearance.

88. Defendants participated in the investigations of and allegations against Plaintiff, as well as the criminal prosecution against him.

89. The criminal prosecution was commenced despite Defendants' knowledge that Plaintiff did not participate in the alleged crime and that probable cause for the arrest and the prosecution did not exist.

90. The criminal prosecution was continued after Defendants knew that they had no probable cause for the original arrest and/or initiation of the prosecution.

91. By participating in the arrest and prosecution which they knew lacked probable cause, Defendants acted with malice against Plaintiff.

92. Defendants prosecuted Plaintiff with malice independent of their lack of probable cause, and with actual malice, bad faith, and/or willful disregard to the harm that it would cause Plaintiff.

93. The above-stated malicious prosecution caused a sufficient post-arraignment liberty restraint on plaintiff.

94. The criminal charge against Plaintiff was terminated favorably to him.

95. As a proximate result of Defendants' intentional and malicious actions, Plaintiff was greatly humiliated, injured in his reputation and trade, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish.

## FIFTH CLAIM
## 42 U.S.C. SECTION 1983--FAILURE TO SUPERVISE

96. Plaintiff repeats and re-alleges each and every allegation contained above with the same force and effect as if more fully set forth herein.

97. At all times relevant herein, Defendants were responsible for supervising, overseeing, and controlling the individually named defendants.

98. Upon information and belief, Defendants State of New Jersey, and/or PIPC intentionally failed to adequately supervise, control, oversee, and/or monitor the PIPPD and the individual defendants.

99. Defendants Supervisor Doe Officer # 1, and/or Sergeant Kimbro, signed off on and/or permitted the arrest of Plaintiff to go forward, despite knowledge that there was no probable cause at the time of Plaintiff's arrest.

100. Defendants knew or should have known, had they diligently exercised their duties to instruct, train, supervise, control, and discipline the individual defendants, that Plaintiff was innocent of the charges, yet they allowed the prosecution of Plaintiff to cover up the unconstitutional actions of defendant PIPPD and the individual defendants.

101. Nevertheless, defendants State of New Jersey and PIPC exercised deliberate indifference by failing to take remedial action. The Defendants failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them. Moreover, Defendants failed to adequately investigate prior complaints filed against the individual defendants.

102. Further, defendants State of New Jersey and PIPC were aware prior to the incident that the individual defendants (in continuation of its illegal custom, practice and/or policy) would stop, arrest, and prosecute innocent individuals, based on pretexts and false evidence.

103.     Defendants State of New Jersey and PIPC were well aware of PO Levine's propensity for police misconduct prior to his employment at PIPPD and prior to this incident, in that PO Levine was fired in 2015 by Pequannock Police Department for illegally running more than 5,000 detailed and unnecessary license-plate inquiries through his patrol car computer over an 11-month period. Upon information and belief, PO Levine conducted only approximately 706 car-stops during this period of time.

104.     Consequently, it was the policy, practice, and custom of Defendants to allow the individual defendants to unlawfully search, seize, and arrest motorists without facts of criminality, probable cause, an arrest warrant, or other legal justification.

105.     It was the policy, practice, and custom of defendants State of New Jersey and PIPC to allow the individual defendants prosecute innocent individuals, based on pretexts and false evidence, and to coerce individuals charged with crimes, for which they knew were innocent, to accept charges for a non-arrestable offense in order to cover up the unconstitutional acts of other law enforcement members. This was done to insulate the individual defendants and officers from liability in civil actions.

106.     As a proximate result of Defendants' intentional and malicious actions, Plaintiff was greatly humiliated, injured in his reputation and trade, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish.

## SIXTH CLAIM
## CUSTOM, POLICY, AND MONELL LIABILITY

107.     Plaintiff repeats and re-alleges each and every allegation contained above with the same force and effect as if more fully set forth herein.

108.     Prior to March 3, 2020, and since, Defendants have permitted and tolerated a pattern and practice of unjustified, unreasonable, and illegal false arrests, false imprisonments,

excessive uses of force, malicious prosecutions, abuses of process, and procedural and substantive due process violations by and through prosecutors and officers of Defendant. Although such actions were improper and illegal, the Defendants' employees involved were not seriously prosecuted, disciplined, or subjected to restraint and such incidents were in fact covered up with official claims that these actions were justified and proper. As a result, Defendants' employees were caused and encouraged to believe that individuals' rights could be violated, and that such violations would in fact be permitted by Defendants.

109.    Defendants' employees, such as the individual defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand, or face any risk of punishment for their conduct.

110.    Defendants' employees, such as the individual defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, that they would receive no reprimand or be punished for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

111.    As a direct and proximate result of the aforesaid acts, omissions, policies, practices and customs of the Defendants, Plaintiff's rights were violated, in a situation where, if there had been proper training, supervision, and corrective action, this would have prevented Plaintiff's rights from being violated.

112.    It was the custom, policy, and practice of Defendants to make an arrest despite no facts of criminality and without probable cause and/or other legal justification.

113.     It was the custom, policy, and practice of Defendants to authorize and permit certain police officers and prosecutors, including the individual defendants, to cause unlawful detentions and continue to prosecute offenses after probable cause is vitiated, which was responsible for the violation of Plaintiff's civil rights.

114.     It was the custom, policy, and practice of Defendants to fail to terminate the prosecutions of individuals innocent of crimes after receiving exculpatory evidence.

115.     It was the custom, policy, and practice of Defendants to encourage and cause constitutional violations by the police officers and prosecutors employed by Defendants, including the violations of Plaintiff's constitutional rights by the individual Defendants.

116.     By maintaining a de facto policy of falsely arresting an individual in Plaintiff's position, despite no facts of criminality and without proper investigation and/or testing, probable cause and/or other legal justification, Plaintiff was caused to have his civil rights violated and harmed through the actions of the individual Defendants.

117.     By maintaining a de facto policy of automatic indemnification, Defendants caused the injuries to Plaintiff through the actions and inactions of the individual defendants.

118.     Defendants' failure to take action against the individual defendants in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

119.     As authorized representatives of Defendants, the defendant police officers' and prosecutors conduct of illegal arrests, searches, seizure, and malicious prosecution of individuals such as Plaintiff constituted a custom, policy, and practice which renders Defendants liable to Plaintiff as a "Person" acting under the color of state law.

120.     These customs, policies, and practices enforced by Defendants were the moving force, proximate cause, and/or affirmative link behind the conduct causing Plaintiff's injuries.

121.     Defendants are therefore liable for violations of Plaintiff's constitutional rights as caused by its/their employees, as described in more detail in the paragraphs herein, and Plaintiff has suffered damages therefrom.

122.     As a proximate result of Defendants' customs, policies, and practices for creating an environment that tolerates, encourages, and condones such constitutional violations, Plaintiff was greatly humiliated, injured in his reputation and trade, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages.

**SEVENTH CLAIM**
**42 U.S.C. SECTION 1983--SUBSTANTIVE DUE PROCESS**

123.     Plaintiff repeats and re-alleges each and every allegation contained above with the same force and effect as if more fully set forth herein.

124.     As a result of the facts alleged herein, Plaintiff was denied his substantive rights under the United States Constitution.

125.     The individual defendants engaged in behavior shocking to the conscience, including, but not limited to, arresting, charging, and maliciously prosecuting Plaintiff without probable cause, and the charges and malicious prosecution of Plaintiff were predicated only on individual defendants power and authority as a government official/officer, and this power was used to retaliate, intimidate, and to oppress Plaintiff.

126.     Such actions by the individual defendants were unjustified and improper and constitute violations of Plaintiffs' substantive due process rights pursuant to 42 U.S.C. § 1983 and the Fifth Amendment to the United States Constitution.

127.     Each of the individually named defendants involved in such illegal actions knew or had reason to know, upon information and belief, that such violations were occurring, and had a realistic opportunity, upon information and belief, to intervene to prevent such violations from occurring.

128.     Defendants abused process by continuously depriving Plaintiff of his substantive rights under the United States Constitution as they had knowledge that their actions were unlawful and that Plaintiff was innocent of the charge against him.

129.     As a proximate result of Defendants' actions, Plaintiff Shaporov was greatly humiliated, injured in his reputation and trade, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages.

## EIGHTH CLAIM
## 42 U.S.C. SECTION 1983--PROCEDURAL DUE PROCESS

130.     Plaintiff repeats and re-alleges each and every allegation contained above with the same force and effect as if more fully set forth herein.

131.     The Defendants caused the arrest and prosecution of Plaintiff without an arrest warrant and without probable cause, and under additional circumstances where a warrantless arrest and continued prosecution of Plaintiff, even if there was probable cause, would have been improper.

132.     Such actions by Defendants were unjustified and improper and constitute violations of Plaintiff's procedural due process rights pursuant to 42 U.S.C. § 1983 and the Fourth and Fifth Amendments to the United States Constitution, as well as Article I, Sections 1 and 7 of the Constitution of the State of New Jersey, and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2.

133.     Each of the individual defendants involved in such illegal actions knew or had reason to know that such violations were occurring, and had a realistic opportunity to intervene to prevent such violations from occurring.

134.     As a proximate result of Defendants' actions, Plaintiff was denied his procedural rights under the United States Constitution, and was greatly humiliated, injured in his reputation and trade, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial, plus punitive damages and attorney's fees.

**NINTH CLAIM**
**42 U.S.C. § 1983 - FAILURE TO INTERVENE**

135.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

136.     Plaintiff was falsely arrested, falsely imprisoned, a victim of excessive use of force, and maliciously prosecuted. Plaintiff had process abused against him and had his substantive and procedural due process rights violated, for absolutely no reason.

137.     The relevant individual defendants had every opportunity to intervene to prevent the said wrongful acts against Plaintiffs, yet each of them failed to intervene to prevent said wrongful acts. Each of the defendants knew or had reason to know that said acts were wrongful and illegal, and yet each of said defendants failed to intervene.

138.     Each of the relevant defendants had a duty to intervene to prevent said wrongful acts and were in the position with opportunity to have intervened yet failed to do so.

As a consequence of Defendants' failure to intervene in violation of Plaintiff's rights pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, Plaintiff suffered physical injuries, pain and suffering, mental anguish, shock, fear, depression, anxiety, Post-

Traumatic Stress Disorder, psychological injuries, psychological distress, and emotional distress (both intentional and negligent), and was otherwise injured herein requiring Plaintiff to undergo medical care/treatment therefore and further causing Plaintiff to incur, and to continue to incur damages and expenses which Plaintiff claims herein.

## TENTH CLAIM
## MALICIOUS ABUSE OF PROCESS/
## MALICIOUS PROSECUTION (PENDENT)

139.     Plaintiff repeats and re-alleges each and every allegation contained above with the same force and effect as if more fully set forth herein.

140.     On or about March 3, 2020, PO Levine signed and filed a complaint charging Plaintiff with crimes that he did not commit.

141.     On or about March 3, 2020 Sergeant Kimbro and/or Supervisor Doe Officer # 1 approved or signed off on PO Levine's false complaint/official document charging Plaintiff with crimes they were aware or should have known were not committed by the Plaintiff.

142.     Sergeant Kimbro and/or Supervisor Doe Officer # 1 failed to intervene, despite knowing that such action was unlawful.

143.     On or about March 28, 2020, Plaintiff was arraigned and charged with one count of Impersonating a Law Enforcement Officer pursuant to N.J.S.A. 2C:28-8B.

144.     The prosecution of Plaintiff was initiated and continued by Defendants with malice and without any legal basis.

145.     At the time the prosecution was commenced, Defendants had knowledge that Plaintiff was innocent of the charges alleged against him.

146.     As a result of the malicious prosecution, Plaintiff was required to pay for the services of a criminal defense attorney at a substantial cost to him.

147.     As a result of the false and unlawful charge, Plaintiff was required to make multiple appearances in Court and travel interstate to make each appearance.

148.     Defendants participated in the investigations of allegations against Plaintiff, as well as the criminal prosecution against him.

149.     The criminal prosecution was commenced despite Defendants' knowledge that Plaintiff did not participate in the alleged crimes and that probable cause for the arrest and initiation of the prosecution did not exist. Plaintiff's disability was the motivating factor behind the decision to prosecute him for crimes he did not commit.

150.     The criminal prosecution was continued after Defendants knew that they had no probable cause for the original arrest or initiation of the criminal prosecution.

151.     By participating in the arrest and prosecution which they knew lacked probable cause, Defendants acted with malice against Plaintiff.

152.     Defendants prosecuted Plaintiff with malice independent of their lack of probable cause, and with actual malice, bad faith, and/or willful disregard to the harm that it would cause Plaintiff.

153.     The above-stated malicious prosecution caused a significant post-arraignment liberty restraint on plaintiff.

154.     The prosecution of Plaintiff was terminated favorably to him, and all criminal charges were dismissed.

155.     Defendants further demonstrated their malicious intent by pressuring Plaintiff to plead guilty to a new non-arrestable traffic charge, despite having incontrovertible evidence that Plaintiff was innocent of the crimes he was charged with.

156.     At all times mentioned, the individual defendants were acting within the scope of their employment.

157.     As a proximate result of Defendants' intentional and malicious actions, Plaintiff was greatly humiliated, injured in his reputation and trade, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Shaporov respectfully requests judgment against Defendants as follows:

A.  A declaratory judgment that the practices herein are unlawful under 42 U.S.C. §§ 1983 and 1988, the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, and New Jersey State Laws against malicious prosecution and abuse of process;

B.  An injunction against Defendants from engaging in each of the unlawful practices and policies set forth herein;

C.  An award of compensatory damages for Plaintiff's physical and emotional suffering as a result of Defendants' unlawful practices;

D.  An award of punitive damages for Defendants' unlawful practices;

E.  An award of prejudgment and post-judgment interest, costs, and expenses of this action together with reasonable attorneys' and expert fees; and

F.  Such other and further relief as the court deems just and proper.

## **JURY DEMAND**

The Plaintiffs hereby demand a trial by jury as to all issues herein so triable.

## **DESIGNATION OF TRIAL COUNSEL**

Dean R. Maglione, Esq., of the Maglione Firm, P.C., is hereby designated as trial counsel for the Plaintiff in the above-captioned matter.

Date:   March 2, 2022

*/s/ M. Anthony Barsimanto*
M. Anthony Barsimanto, Esq.
Attorney for the Plaintiffs