<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDER SHAPOROV,<br><br>           Plaintiff,<br><br>  v.<br><br>STATE OF NEW JERSEY, *et al.*,<br><br>           Defendants. | Case No. 22cv1150 (EP) (LDW)<br><br>**OPINION** |

**PADIN, District Judge.**

  Plaintiff Alexander Shaporov ("Plaintiff") brings this action against the State of New Jersey, Palisades Interstate Parkway Commission ("Commission"), Palisades Interstate Parkway Police Department ("Palisades PD"), Sergeant Gregory D. Kimbro Jr. ("Sergeant Kimbro"), Palisades PD Officers Matthew Levine ("PO Levine"), Timothy Conboy ("PO Conboy"), Peter Wojcik ("PO Wojcik"), and Scott Bilotti ("PO Bilotti"),[1] Palisades PD Doe Police Officers # 1-10 ("PO Doe #1-10"), and Palisades PD Supervisor Doe Police Officers #1 ("Supervisor #1") (collectively, "Defendants"), following a March 2020 incident on the Palisades Interstate Parkway that resulted in Plaintiff's arrest. Defendants move to dismiss Plaintiff's 10-count Complaint. D.E. 17. The Court decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R.78(b). For the reasons set forth below, Defendants' motion will be **GRANTED**.

---

[1] Sergeant Gregory D. Kimbro Jr. and the four named Palisades PD Officers will collectively be referred to as "Officer Defendants."

I.   **BACKGROUND**[2]

Plaintiff is a 38-year-old male with a disabled left hand.  D.E. 1 "Compl." ¶ 17.  He is a United States citizen, who resides in Kings County, New York.  *Id.*  He is employed as a New York State investigator.  *See* ¶ 23.

On March 3, 2020, Plaintiff, was travelling northbound in a New York State government-issued vehicle on the Palisades Interstate Parkway in Alpine, New Jersey.  ¶¶ 19-20.  He was enroute to a training in Albany, New York, associated with his job as a New York State investigator.  ¶ 19.  At approximately 11:00 a.m., PO Levine pulled Plaintiff over.  ¶ 20.

PO Levine told Plaintiff that he had pulled him over for having tinted windows in violation of N.J.S.A. § 39:3-75.1.  ¶ 22.  But Plaintiff alleges that this reason was pretextual because Plaintiff's New York State government-issued vehicle was compliant with lawful levels of tint. *Id.*  Plaintiff explained to PO Levine that: he was driving an official New York State government-issued vehicle; he was a New York State investigator; and he was driving to Albany, New York, for training.  ¶¶ 22-23.  Plaintiff also provided PO Levine with a copy of his official New York State employee identification.  ¶ 23.

PO Levine observed that Plaintiff had a disabled left hand and told him that he did not believe that Plaintiff was a New York State investigator.  ¶ 25.  PO Levine took Plaintiff's New York State investigator credentials and called for additional police units.  ¶ 26.

Sergeant Kimbro, PO Conboy, PO Wojcik, PO Bilotti, and Doe Officers arrived on the scene.  ¶ 27.  Plaintiff complied with PO Levine's instruction to step out of the vehicle.  ¶ 28.  PO Levine patted Plaintiff down.  ¶ 29.

---

[2] The facts in this section are taken from the well-pled allegations in the Complaint, which the Court presumes to be true for purposes of resolving the instant motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

Plaintiff was subsequently arrested, handcuffed, and placed in the back of an unventilated, "very hot" patrol car for an extended period of time.  ¶¶ 32-33.  Without being properly secured by a seatbelt, Plaintiff was taken to the Palisades Interstate Park Police Department for processing, where he was charged with violating N.J.S.A. § 2C:28-8B, Impersonating a Law Enforcement Officer.  ¶¶ 34-37.

Plaintiff alleges that despite his credible and true claim of being a New York State investigator, as well as having access to Plaintiff's New York State official badge and identification, Defendants conspired to falsely complete official documentation and filed fabricated charges against Plaintiff.  ¶¶ 40-45.

On March 23, 2020, Plaintiff was required to make a mandatory appearance at the Court of the Palisades Interstate Park, where an official criminal complaint against Plaintiff was presented charging Plaintiff with various crimes, including impersonating a law enforcement officer.  ¶ 47.  These charges were ultimately dismissed in Plaintiff's favor on October 20, 2020.  ¶¶ 49, 51.  The same day, Plaintiff was charged with a new traffic violation—a lane changing offense.  ¶ 52.

Pursuant to the New Jersey Tort claims Act, Plaintiff served Notices of Claim upon New Jersey and Palisades PD for personal injuries, false arrest, negligence, recklessness, unlawful search and seizure, failure to protect, deliberate indifference, intentional and negligent infliction of emotional distress, harassment, and gross negligence.  ¶ 55.

Based on these facts, Plaintiff filed a 10-count Complaint alleging various claims under 42 U.S.C. § 1983 for false arrest (Count One), false imprisonment (Count Two), unreasonable and excessive force (Count Three), malicious prosecution (Count Four), failure to supervise (Count Five), substantive and procedural due process violations (Counts Seven and Eight), failure to

intervene (Count Nine), and a *Monell* claim (Count Six).  ¶¶ 57-138.  Additionally, Plaintiff alleges state law claims under the New Jersey State Civil Rights Act ("NJCRA") for malicious abuse of process and malicious prosecution (Count Ten).  ¶¶ 139-157.  Based on Plaintiff's collective use of the term "Defendants" in each count of the Complaint, the Court can only glean that Plaintiff intends to assert each claim against every defendant.  As relief, Plaintiff seeks: a declaratory judgment; an injunction against Defendants; compensatory damages; punitive damages; and pre- and post-judgment interest, costs, and expenses, as well as attorneys' and expert fees.  ¶¶ A.-F.

Defendants now move to dismiss Plaintiff's claims asserted against Commission, Palisades PD, and Officer Defendants, at least to the extent that these claims are asserted against them in their official capacities.  *See* D.E. 17 "Mot."  Defendants do not move to dismiss Plaintiff's claims to the extent that they are asserted against Officer Defendants in their individual capacities, and neither do Defendants move to dismiss New Jersey as a defendant.

## II.   LEGAL STANDARDS

Defendants' motion to dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The Court considers the jurisdictional issues first, because a dismissal for lack of jurisdiction renders all other claims moot.  *Ruhrgas A.G. v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case.").

### A. Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists.  *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).  In resolving a Rule 12(b)(1) motion, a court must first determine whether the motion presents a "facial" or "factual" attack because the distinction

determines how the pleading is reviewed.  *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014); *see also Saint-Jean v. Cty. of Bergen*, 509 F. Supp. 3d 87, 97 (D.N.J. 2020) (citation omitted).  The basis of a facial attack is that a claim on its face "is insufficient to invoke the subject matter jurisdiction of the court" and "does not dispute the facts alleged in the complaint."  *Id.* at 358; *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

When a defendant asserts Eleventh Amendment immunity, he raises a facial attack.  *Saint-Jean*, 509 F. Supp. 3d at 97 (citing *Garcia v. Knapp*, 2020 U.S. Dist. LEXIS 93871, at *11 (D.N.J. May 29, 2020)).  The reason for this is that "[t]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction[.]"  *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996).

A court reviewing a facial attack pursuant to Rule 12(b)(1) must "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Constitution Party of Pa.*, 757 F.3d at 358; *see also Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) ("The facial attack does offer similar safeguards to the plaintiff [as a 12(b)(6) motion]: the court must consider the allegations of the complaint as true.").  Ultimately, the complaint may only be dismissed if it appears to a certainty that the plaintiff will not be able to demonstrate a colorable claim of jurisdiction.  *Cardio-Med. Assoc., Ltd. v. Crozer-Chester med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983) (quotation marks omitted).

### B. Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  To

survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. DISCUSSION

Defendants raise four arguments as to why Plaintiff's claims should be dismissed: (1) claims brought against Defendants in their official capacities are barred by Eleventh Amendment sovereign immunity; (2) claims brought against Defendants in their official capacities are not viable because Defendants are not "persons" subject to suit under 42 U.S.C. § 1983; (3) *Monell* liability is inapplicable to Defendants because they are "arms of the State" and not local entities; and (4) claims seeking prospective injunctive relief are fatally flawed. Mot. at 1. Defendants' first three arguments are interrelated. Plaintiff concedes that the claims brought against Defendants, in their roles as either "arms of the state" or "officials acting in their official capacities," are not viable. D.E. 24 "Opp'n" at 6.

Instead, Plaintiff contends only that he properly pled claims against Officer Defendants in their "individual capacities" pursuant to Section 1983 and the NJCRA. *Id.* But Defendants do not raise any arguments with respect to the claims brought against Officer Defendants in their individual capacities. Thus, at this juncture, the Court will not address these particular claims.

42 U.S.C. § 1983 provides a cause of action against a person who, while acting under color of law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Section 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Only "persons" are subject to suit under Section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66-70 (1989).

On its face, Section 1983 does not afford immunities, but the Supreme Court has "accorded certain government officials either absolute or qualified immunity." *Wyatt*, 504 U.S. at 163-64. For example, the Supreme Court has excluded from Section 1983's definition of "person[:]" "States," state agencies and instrumentalities acting as "arms of the State" for Eleventh Amendment purposes, and "officials acting in their official capacities." *Will*, 491 U.S. at 70-71.

The Eleventh Amendment protects non-consenting states from suit brought in federal court by private citizens seeking monetary damages or injunctive relief, except for prospective injunctive relief. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Deal v. Velez*, 244 F. Supp. 3d 435, 442 (D.N.J. 2017); U.S. CONST. amend. XI. Immunity under the Eleventh Amendment may extend to state agencies and instrumentalities acting as "arms of the state." *Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997). The "arm of the state" label attaches to a state agency or instrumentality where the state is the "real party in interest" and a judgment against it "would have essentially the same practical consequences as a judgment against the State itself." *Bowers v. NCAA*, 475 F.3d 524, 546 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007) (quoting *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989)).

As a result, a state agency or instrumentality acting as an arm of the state benefits from Eleventh Amendment sovereign immunity. *See id.*

Furthermore, because a state agency or instrumentality acting as an arm of the state for Eleventh Amendment purposes is not a "person" within the meaning of Section 1983, then that agency or instrumentality is not subject to suit under Section 1983. *Will*, 491 U.S. at 70-71. This same bar applies for *Monell* claims. *Id.* at 70 (holding that *Monell* is not applicable to "States or governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes."); *May v. Irvington Police Dep't*, 2016 U.S. Dist. LEXIS 6649, at *6 (D.N.J. Jan. 19, 2016) (same). Consequently, if the Court finds that Commission and Palisades PD are "arms of the state" for Eleventh Amendment purposes, then the Court must dismiss the claims brought against those parties.

But first, the Court will address the claims brought against Officer Defendants in their "official capacities." These claims are not viable because, at least in their official capacities, these defendants enjoy Eleventh Amendment sovereign immunity and are excluded from Section 1983's definition of "person." *See Will*, 491 U.S. at 71. But "suits for injunctive relief against state officials [in their individual capacities] brought to end ongoing violations of federal law are not barred by the Eleventh Amendment." *See Walker v. Beard*, 244 F. App'x 439, 441 (3d Cir. 2007) (citing *Ex Parte Young*, 2019 U.S. 123 (1908)) (citations omitted). Resultingly, the claims brought against Officer Defendants in their "individual capacities" remain viable. *See Hafer v. Melo*, 502 U.S 21, 30-31 (1991) ("That is, the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under [Section] 1983.") (citation omitted). Accordingly, to the extent that Plaintiff asserts the claims against Officer Defendants in their official capacities, those claims are dismissed, but to the extent that Plaintiff asserts claims

8

against Officer Defendants in their individual capacities, the Court leaves those claims untouched in this Opinion.

Next, the Court will address whether the claims brought against Commission and Palisades PD are viable. This analysis turns on whether Commission and Palisades PD are "arms of the state" for purposes of the Eleventh Amendment. If they are, they enjoy Eleventh Amendment sovereign immunity, and would be excluded from Section 1983's definition of "persons," which would make them unamenable to suit under that section. If Commission and Palisades PD are in fact "arms of the state," then monetary damages may not be sought against them because of their Eleventh Amendment sovereign immunity.

In determining whether a state agency or instrumentality is acting as an arm of the state for Eleventh Amendment purposes, the Third Circuit considers the *Fitchik* factors: "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Bowers*, 475 F.3d at 546 (citing *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 229 (3d Cir. 2006)). No particular factor is dispositive. *See Cooper v. Se. PA Transp. Auth.*, 548 F.3d 296, 302 (3d Cir. 2008). Instead, each case is to "be considered on its own terms, with courts determining and then weighing the qualitative strength of each individual factor in the unique factual circumstances at issue." *Karns v. Shanahan*, 879 F.3d 504, 514 (3d Cir. 2018).

Defendants argue that the *Fitchik* factors make clear that Commission and Palisades PD, its subsidiary, are arms of the state. Mot. at 9. Plaintiff does not dispute this argument. The Court applies the *Fitchik* factors below and concludes that Commission and Palisades PD are arms of the state, and thus, benefit from Eleventh Amendment sovereign immunity and fall outside of Section 1983's persons definition.

The first *Fitchik* factor asks whether the New Jersey is obligated to pay for a judgment entered against Commission and Palisades PD. *Bowers*, 475 F.3d at 547; *Cooper v. SEPTA*, 548 F.3d 296, 302 (3d Cir. 2008). Defendants point to N.J.S.A. §§ 32:14-1.4 and -21, which contain provisions purporting to demonstrate that New Jersey would "ultimately have to withdraw funds from its Treasury for any liability on the part of the [Commission and Palisades PD]." Mot. at 10. These provisions make no direct mention that New Jersey (through its Treasury) would be obligated to bear Commission or Palisades PD's liability; while there is mention of duties and liabilities, there is no explicit mention of an obligation by New Jersey to pay for their liabilities. *See Febres*, 445 F.3d at 234 (explaining that "whether Board funds employed to satisfy a judgment were funds which had initially been provided by the state" is insufficient to "suggest that New Jersey retains ownership or control of the funds appropriated to the Board[,]" such that "[t]he magnitude of the state's contribution does not alter the fact that, once deposited in the Board's accounts, these funds belong to the Board. If then used to pay a judgment, we can say only that the judgment was satisfied with the Board's monies."). Instead, these provisions primarily discuss an annual budget request, the authority to spend state funds, and other responsibilities and duties of Commission and its appointed patrolmen. Accordingly, the first *Fitchik* factor does not weigh in favor of sovereign immunity.

The second *Ftichik* factor asks what status Commission and Palisades PD have under state law, including "how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation." 873 F.2d at 659. Defendants put forth the following favorable evidence: Commission exists within the New Jersey Department of Environmental Protection ("NJDEP"), N.J.S.A. § 32:14-1.2; both Commission and Palisades PD are public entities within the scope of

10

the New Jersey Tort Claims Act ("TCA"), *Aversano v. Palisades Interstate Parkway Comm'n*, 363 N.J. Super 266, 287 (App. Div. 2003), N.J.S.A. § 59:1-3; Commission was established by compact between the states of New Jersey and New York and is allocated to the NJDEP, N.J.S.A. § 32:14-1.3; Commission is independent of supervision and control of the NJDEP only where such control is not expressly provided in Commission's statutory scheme, *id.*; Commission is entitled to legal services from the New Jersey Office of the Attorney General, N.J.S.A. § 32:14-1.6(a); and Commission is required to make an annual report of its activities to the New Jersey Governor and Legislature, N.J.S.A. § 32:14-1.11. Mot. at 11. Additionally, the Commission's employees are considered state employees for purposes of workers' compensation and are entitled participate in the state's employee retirement program. N.J.S.A. § 32:14-4. Based on the treatment Commission and Palisades PD enjoy under state law as arms of the state, the second *Fitchik* factor weighs in favor of sovereign immunity.

The third *Fitchik* factor asks about "the degree of independence from state control an entity exercises." *Bowers*, 475 F.3d at 548. Defendants contend that Commission and Palisades PD lack autonomy from the State, including at the time that they arrested and prosecuted Plaintiff. Mot. at 12-13. For support, Defendants cite to statutory limits imposed on the Commission's autonomy: Commission is part of NJDEP, N.J.S.A. § 32:14-1.2; Commission is included in the definition of "State" for purposes of the TCA, N.J.S.A. § 59:1-3; Commission is required to make an annual report of its activities to the New Jersey Governor and Legislature, N.J.S.A. § 32:14-1.11; and the State has complete control over Commission's budget, N.J.S.A. § 32:14-1.4(b). Thus, while Commission and Palisades PD do have some limited authority pursuant to N.J.S.A. § 32:14-1.1, their degree of independence from the state is limited. Accordingly, the third *Fitchik* factor weighs in favor of sovereign immunity.

Having considered the *Fitchik* factors, the Court concludes that Commission and Palisades PD are "arms of the state." Therefore, they are entitled to Eleventh Amendment sovereign immunity and are not "persons" subject to suit under Section 1983. *See Saint-Jean v. Cty. of Bergen*, 509 F. Supp. 3d 87, 99, 114 (D.N.J. 2020) (dismissing Section 1983 and pendant state law claims against Commission and Palisades PD on sovereign immunity grounds); *see also Panova v. Palisades Interstate Parkway Police Dep't*, 2022 U.S. Dist. LEXIS 114323, at *22-23 (D.N.J. June 23, 2022) (same). Accordingly, the Court dismisses all the claims brought against Commission and Palisades PD.

Finally, the Court considers Defendants' contention that Plaintiff lacks standing to assert a claim for prospective injunctive relief. Mot. at 16. The relevance of this argument is that the Complaint seeks an "injunction against Defendants from engaging in each of unlawful practices and policies set forth herein," *see* Compl. ¶ B, and the fact that Eleventh Amendment sovereign immunity provides an exception only for prospective injunctive relief. *See Laskaris v. Thornburgh*, 661 F.2d 23, 26 (3d Cir. 1981) (noting that prospective injunctive relief is an exception to the Eleventh Amendment sovereign immunity bar). This particular contention applies only to Defendants acting as "arms of the state" (Commission and Palisades PD) or "officials acting in their official capacities" (Officer Defendants—not in their individual capacities). *See* D.E. 27 "Reply" at 2-3 (confirming that Defendants do not seek dismissal of Plaintiff's claims against Officer Defendants in their individual capacities, except to the extent Plaintiff seeks injunctive relief for the state law claims). Plaintiff does not respond to this argument. The Court agrees with Defendants: as currently pled, Plaintiff lacks standing to bring a claim for prospective injunctive relief.

"Standing is a jurisdictional matter." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). "'Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.'" *Id.* (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)). To satisfy standing, a plaintiff must establish three elements: (1) the plaintiff suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[;]" (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly [] trace[able] to the challenged action of the defendant, and not [the] result[of] the independent action of some third party not before the court[;]" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

As currently pled, Plaintiff's prayer for injunctive relief is lacking as to the "injury in fact" requirement of standing. "In order to obtain standing for prospective relief, the plaintiff must establish a real and immediate threat that he would again be the victim of the allegedly unconstitutional practice." *Chavis v. United States*, 597 F. App'x 38, 42 (3d Cir. 2014) (citing *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987)); *see also Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional."). "[T]he fact of past injury, 'while presumably affording [the plaintiff] standing to claim damages [] does nothing to establish a real and immediate threat that he would again' suffer similar injury in the future." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210-11 (1995) (citations omitted); *see also Brown*, 819 F.2d at 400 ("While a

13

[Section] 1983 plaintiff's allegation that he has suffered from unconstitutional practices may be sufficient to establish standing to sue for damages, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.'") (citations omitted).

Here, Plaintiff has failed to allege facts indicating that he faces a "real and immediate" threat of suffering injuries in the future. *See generally*, D.E. 1 (lacking any assertion that Plaintiff will suffer similar constitutional deprivations in the future); *see also Mehr v. Atl. City*, 2014 U.S. Dist. LEXIS 121869, at *40 (D.N.J. Sept. 2, 2014) (finding that the plaintiff asserting a Section 1983 claim against Atlantic City and a police officer in his official capacity had no standing for injunctive relief because it "is based entirely on past harm[,]" "this harm lacks the 'high degree of immediacy required to constitute injury in fact and provide Article III standing' for prospective relief[,]" and the plaintiff "failed to show a likelihood that he himself will be harmed again by Defendants in the near future[.]") (citations omitted); *Lyons*, 461 U.S. at 105 ("That Lyons may have been illegally chocked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part."). As a result, with respect to Plaintiff's claims brought against Defendants, in their roles as "arms of the state" or "officials acting in their official capacities," Plaintiff's allegations are insufficient to satisfy the "injury in fact" element necessary for standing. Because the "injury in fact" element for standing is not met, the second and third elements need not be addressed here. Accordingly, the Court concludes that Plaintiff does not allege facts to show that he has standing to seek prospective injunctive relief against Defendants in these roles.

The Court notes that Plaintiff correctly points out that Eleventh Amendment sovereign immunity does not apply to Officer Defendants in their individual capacities because they are "persons" within the meaning of Section 1983. Opp'n at 6-7. And Plaintiff adds that the Court would also be able to exercise pendent jurisdiction over Plaintiff's state law claims. In their reply, Defendants "acknowledge that they did not seek dismissal of those claims." Reply at 2. Resultingly, the Court need not address the claims brought against Officer Defendants in their individual capacities yet. *See Hafer v. Melo*, 502 U.S. at 30-31; *Kirkland v. DiLeo*, 581 F. App'x 111, 116 n.11 (3d Cir. 2014); *see also GJJM Enters., LLC v. City of Atl. City*, 293 F. Supp. 3d 509, (D.N.J. 2017) ("As such, an employee of the State named as a defendant in a civil rights action may be held liable for damages only if that person has personal involvement in the alleged wrongs and is sued in their personal capacity.") (internal citation omitted).

Although Plaintiff has not sought leave to amend the Complaint, Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given "when justice so requires." "[I]nadequate complaints should be dismissed without granting leave to amend only if the amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1140, 1434 (3d Cir. 1997). Amendment would be futile "if the amended complaint would fail to state a claim for relief under Rule 12(b)(6)." *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2001). Accordingly, the Court grants dismissal of Plaintiff's claims without prejudice.[3]

---

[3] The Court cautions Plaintiff that the Complaint straddles the "shotgun pleading" line. The Eleventh Circuit has recently identified several types of shotgun pleadings, including: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts[;]" (2) a complaint that is "replete with conclusory, vague, and immaterial facts not []

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. The Court dismisses all claims brought against Commission, Palisades PD, and Officer Defendants in their official capacities[4] without prejudice. Plaintiff will have 30 days to file an amended complaint. For clarity, all claims brought against Officer Defendants in their individual capacities remain. An appropriate Order accompanies this Opinion.

Dated: January 11, 2023

_____
Evelyn Padin, U.S.D.J.

---

connected to any particular cause of action[;]" and (3) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Here, each count of the Complaint incorporates by reference all allegations contained in the preceding numbered paragraphs. Moreover, the Complaint adopts a "collective accusation" approach in which all claims are asserted against all Defendants.

[4] "[A] state official in his [] official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *GJJM Enters.*, 293 F. Supp. 3d at (citing *Will*, 491 U.S. at 71 n.10). Thus, Plaintiff's ability to pursue Section 1983 claims against Officer Defendants depends on his ability to seek prospective injunctive relief.