**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALEXANDER SHAPAROV, an individual,<br><br>       Plaintiff,<br><br>v.<br><br>STATE OF NEW JERSEY; PALISADES INTERSTATE PARKWAY COMMISSION; PALISADES INTERSTATE PARKWAY POLICE DEPARTMENT; PIPPD P.O. MATTHEW LEVINE, BADGE NO. 366; PIPPD SERGEANT GREGORY D. KIMBRO JR, BADGE NO. 368; PIPPD P.O TIMOTHY CONBOY, BADGE NO. 393; PIPPD P.O PETER WOJCIK, BADGE NO. 406; PIPPD P.O. SCOTT BILOTTI, BADGE NO. 413; PIPPD DOE POLICE OFFICERS # 1-10; PIPPD SUPERVISOR DOE POLICE OFFICERS # 1; #1-10; the individual defendant(s) sued individually and in their official capacities,<br><br>       Defendants. | Civil Action No.: 2:22-cv-01150-EP-LDW |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR**

**SUMMARY JUDGMENT**

i

**Contents**

I. .. INTRODUCTION ................................................................................................ 1

II. . STATEMENT OF FACTS ................................................................................... 2

III. LEGAL STANDARD............................................................................................ 4

IV. FALSE ARREST AND FALSE IMPRISONMENT ............................................. 5

   A.   Probable cause to issue citations for traffic violations did not provide the individual defendants probable cause to arrest Mr. Shaparov. ................................................ 6

   B.   Probable cause did not exist to arrest Plaintiff for impersonating a law enforcement officer where Plaintiff is actually a law enforcement officer with the state of New York, and the NYPD ................................................................................ 6

   1. Plaintiff did not impersonate a law enforcement officer since he is a Medicaid Investigator for the State of New York.................................................................... 8

   2. Plaintiff did not impersonate a Police Officer where he is an Auxiliary Police Officer member of the NYPD.........................................................................................8

   3. Plaintiff did not attempt to induce Defendant's reliance even if Plaintiff identified as a police officer........................................................................................................10

V.   SUPERVISORY LIABILITY AND FAILURE TO INTERVENE .........................12

   A.   Sergeant Kimbro bears supervisory liability for allowing Police Officer Levine to falsely arrest Plaintiff and commit other constitutional violations against him......................................12

   B. Sergeant Kimbro bears liability for failing to intervene and protect Plaintiff from being falsely arrested and maliciously prosecuted without probable cause...........................................14

VI.  MALICIOUS PROSECUTION...............................................................................15

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

A. There are sufficient facts to support a claim for Malicious Prosecution under Section 1983 and New Jersey state law ................................................................................................ 15

1. There was a favorable termination despite a mixed Verdict................................................. 16

2. Probable cause did not exist.................................................................................................. 17

    i.   The record shows proof as to Plaintiff's innocence.................................................17

    ii.   The plea agreement did not establish probable cause.............................................18

VII. QUALIFIED IMMUNITY ....................................................................................................19

A. A reasonable officer would not believe he had probable cause to arrest an Auxiliary Police Officer for identifying as a police officer.................................................................................21

VIII. PUNITIVE DAMAGES........................................................................................................23

IX.   CONCLUSION.....................................................................................................................26

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*,
  372 F.3d 572 (3d Cir. 2004) ................................................................................. 15

*Anderson v. Creighton*,
  483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) ..................................... 28

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................ 4, 5, 6, 7

*Beck v. State of Ohio*,
  379 U.S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964) ........................................... 28

*Berg v. Cnty. of Allegheny*,
  219 F.3d 261 (3d Cir. 2000) ............................................................................ 15, 25

*Brown v. State*,
  230 N.J. 84, 165 A.3d 735 (2017) ........................................................................ 24

*Camiolo v. State Farm Fire & Cas. Co.*,
  334 F.3d 345 (3d Cir. 2003) ............................................................................ 25, 26

*Castro v. New Jersey*,
  521 F. Supp. 3d 509 (D.N.J. 2021) ...................................................................... 29

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................ 6

*Costa v. Josey*,
  83 N.J. 49, 415 A.2d 337 (1980) .......................................................................... 29

*Curley v. Klem*,
  499 F.3d 199 (3d Cir. 2007) ............................................................................ 23, 24

*Dowling v. City of Philadelphia*,
  855 F.2d 136 (3d Cir. 1988) ............................................................................. 7, 10

*Drake v Andruczyk*,
  2011 US Dist LEXIS 40209, at *19 (D.N.J. Apr. 13, 2011) ................................. 15

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*Earl v. Winne*,
    34 N.J. Super. 605, 112 A.2d 791 (Co. 1955) ........................................................ 29

*Est. of Smith v. Marasco*,
    318 F.3d 497 (3d Cir. 2003) ........................................................................... 7

*Fielder v. Stonack*,
    141 N.J. 101, 661 A.2d 231 (1995) ................................................................ 28

*Frohner v. City of Wildwood*,
    2008 US Dist LEXIS 97536, ........................................................................ 13

*Gilles v. Davis*,
    427 F.3d 197 (3d Cir. 2005) .................................................................... 24, 26

*Groman v. Twp. of Manalapan*,
    47 F.3d 628 (3d Cir. 1995) ........................................................................... 8

*Halsey v. Pfeiffer*,
    750 F.3d 273 (3d Cir. 2014) ......................................................................... 8

*Harlow v. Fitzgerald*,
    457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ....................................... 23

*Heck v. Humphrey*,
    512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) ..................................... 19

*Ianuale v. Keyport Twp.*,
    No. 15-8256, 2016 WL 6043804, (D.N.J. Oct. 13, 2016) ..................................... 22

*In re Mushroom Direct Purchaser Antitrust Litig.*,
    655 F.3d 158 (3d Cir. 2011) ........................................................................ 23

*Jackson v. Nassan*,
    No. 2:08CV1054, 2009 WL 2707447 (W.D. Pa. Aug. 26, 2009) ............................. 19

*Kossler v. Crisanti*,
    564 F.3d 181 (3d Cir. 2009) .................................................................... 19, 20

*Lind v. Schmid*,
    67 N.J. 255, 337 A.2d 365 (1975) ................................................................ 19

*LoBiondo v. Schwartz*,
    199 N.J. 62, 970 A.2d 1007 (2009) ............................................................... 19

v

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*Manitta v. N.J.,*
  No. 15-2870, 2016 WL 609476, at *3 (D.N.J. Feb. 16, 2016) ................................. 19

*Maryland v. Pringle,*
  540 U.S. 366 (2003) ...................................................................................... 25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) .............................. 5

*McKenna v. City of Philadelphia,*
  582 F.3d 447 (3d Cir. 2009) ........................................................................ 18

*Meyer v. Riegel Prod. Corp.,*
  720 F.2d 303 (3d Cir. 1983) .......................................................................... 5

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985) ...................................................................................... 23

*Montgomery v. De Simone,*
  159 F.3d 120 (3d Cir. 1998) ................................................................. 15, 26

*Orsatti v. New Jersey State Police,*
  71 F.3d 480 (3d Cir. 1995) ................................................... 7, 8, 27, 28

*Piazza v. Lakkis,*
  No. 3:11-cv-2130, 2012 WL 2042671 (M.D. Pa. June 5, 2012) ............... 19

*Robinson v. Jordan,*
  804 F. Supp. 2d 203 (D.N.J. 2011) ............................................................ 19

*Santini v. Fuentes,*
  795 F.3d 410 (3d Cir. 2015) ........................................................................ 23

*Saucier v. Katz,*
  533 U.S. 194 (2001) ............................................................................. 23, 24

*Savarese v. Agriss,*
  883 F.2d 1194 (3d Cir. 1989) ...................................................................... 27

*Sch. Bd. of Nassau Cnty., Fla. v. Arline,*
  480 U.S. 273, 107 S. Ct. 1123, 94 L. Ed. 2d 307 (1987) ........................... 28

*Scott v. Harris,*
  550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)........................... 24

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*Sherwood v. Mulvihill*,
   113 F.3d 396 (3d Cir. 1997) ............................................................................ 8

*Smith v. New Jersey Div. of Child Prot. & Permanency*,
   723 F. App'x 119 (3d Cir. 2018) .................................................................... 29

*Smith v. Wade*,
   461 U.S. 30 (1983) ......................................................................................... 27

*State v. Cantor*,
   221 N.J. Super. 219, 534 A.2d 83 (App. Div. 1987) ..................................... 14

*State v. Gandhi*,
   989 A.2d 256 (N.J. 2010) ........................................................................ 10, 13

*State v Gordon*,
   2019 N.J. Super. Unpub., LEXIS 1642, at *11 [Super Ct App Div July 17, 2019, No. A-4517-16T2] ............................................................................. 11

*State v. Robinson*,
   92 A.3d 656 (N.J. 2014) ................................................................................ 10

*State v Sanford*,
2010 N.J. Super. Unpub., LEXIS 3113, ............................................................ 13

*United States v. Mounts*,
   248 F.3d 712 (7th Cir. 2001) ......................................................................... 25

*Walczyk v. Rio*,
   496 F.3d 139 (2d Cir. 2007) .......................................................................... 26

*White v. City of Vineland*,
   500 F. Supp. 3d 295 (D.N.J. 2020)........................................................... 17, 18

*Williams v. Borough of W. Chester, Pa.*,
   891 F.2d 458 (3d Cir. 1989) ............................................................................ 6

**Statutes**

42 U.S.C. § 1983 ................................................................................................... 1

42 U.S.C. § 12132 ............................................................................................... 28

N.J. Stat. Ann. § 2C:28-8 ............................................................ 1, 10, 11, 14, 25, 27

N.J. Stat. Ann. § 39:3-75 ............................................................................. 1, 9, 20

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

N.J. Stat. Ann. § 39:4-88 ........................................................................................... 9

N.J. Stat. Ann. § 39:4-82 .................................................................................... 1, 9, 20

N.J. Stat. Ann. § 59:3-3 ............................................................................................ 24

N.J. Stat. Ann. § 59:3-14 .......................................................................................... 24

**Rules**

Fed. R. Civ. P. 56 ................................................................................................ 4, 6, 7

**Other Authorities**

Model Penal Code § 241.9 ................................................................................... 10, 14

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiff, Alexander Shaparov, submits this opposition to Defendants' Motion for Summary Judgment, which seeks to dismiss his claims brought under 42 U.S.C. § 1983 (2024) and the New Jersey Civil Rights Act ("NJCRA"). Plaintiff Alexander Shaparov, a sergeant auxiliary police officer with the New York City Police Department, on duty as Medicaid Investigator for the State of New York, was driving an official New York state vehicle to job training in Albany, NY, when he was stopped by Officer Levine on the New Jersey Interstate Parkway for alleged illegal window tint. Despite providing his identification and badge, Officer Levine doubted Plaintiff's credentials, calling additional officers to the scene. Plaintiff Shaparov was arrested without probable cause. At the precinct, officers mocked Plaintiff Shaparov's disability, questioning his ability to serve as a police officer with a deformed hand. Plaintiff was charged with impersonating a law enforcement officer under N.J. Stat. Ann. § 2C:28-8B, based on the assumption that his credentials were forged. He also faced two traffic violation charges: "failure to keep right" (N.J. Stat. Ann. § 39:4-82) and "safety glass requirement" for tinted windows (N.J. Stat. Ann. § 39:3-75). The criminal charge and Safety Glass Requirement traffic infraction were dismissed in his favor on October 20, 2020. Plaintiff argues that the defendants' actions violated his civil rights, and the court has jurisdiction over these claims under 42 U.S.C. § 1983 and the NJCRA. Furthermore, Plaintiff contends that Defendants have failed to meet the high standard required for summary judgment, as genuine issues of material fact remain in dispute, particularly concerning the officers' conduct, their disregard of exculpatory evidence, and the lack of probable cause. Therefore, summary judgment should be denied, and Plaintiff's claims should proceed to trial..

## II.     STATEMENT OF FACTS

On March 3, 2020 Mr. Shaparov was driving a New York state issued vehicle to Albany for training in his capacity as a Medicaid Investigator. Afanador Cert., Exhibit C, Shaparov Dep., 48:4-50:12. When the Plaintiff was pulled over by Defendant Levine, it is undisputed that he was asked "where are you on the job." Exhibit A, Levine Video, 10:56:33-38. In response, the Plaintiff stated that he was on the job for New York State. Following this, Defendant Levine inquired, "do you have I.D. for the job." Exhibit A, Levine Video, 10:56:35-45. The Plaintiff responded by saying, "I am actually on a government job…employee," and it was during this initial exchange (or shortly prior), Plaintiff displayed his Medicaid Investigator badge. Exhibit A, Levine Video, 10:56:43-51. We can determine this to be the case because PO Levine later states in the video that the Medicaid Investigator badge is not a Police Officer badge. Exhibit A, Levine Video, 10:57:00-10:57:08. But it is clear that the badge was shown early on when Defendant Levine was questioning about where Plaintiff was working. Exhibit A, Levine Video, 10:56:33-38. In this case Plaintiff answered accurately as to his position with New York state Medicaid Investigations. It is undisputed that at some point Defendant shifted his questioning and asked whether Plaintiff was a Police Officer, and a Cop. Exhibit A, Levine Video, 10:56:50-57. This shift in questioning seems to be separate and apart from the questions and answers given about where Plaintiff was on the job. Id. During this line of questioning Plaintiff seems to be giving a narrative and not just a "yes" answer. Id.  Defendant Levine then ask for clarity by asking Plaintiff if he carries a gun. Exhibit A, Levine Video, 10:56:50-10:57:00. Defendant Levine then asks if Plaintiff has a Police I.D., stating the Medicaid Investigator badge is not a Police I.D. Exhibit A, Levine Video, 10:57:00-10:57:08. Plaintiff through questioning from Defendant Levine acknowledged that he went to New York State police academy.  Exhibit A, Levine Video, 10:57:13-10:57:30. It looks like at some point the Plaintiff begins looking for his Auxiliary Police Officer identification in the shield pouch

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

but is having a hard time retrieving it. Exhibit A, Levine Video, 10:58:31-40; 10:59:04-10. Defendant Levine then accuses Plaintiff of answering "yes" to Defendant Levine's question of whether Plaintiff was a Police Officer. Exhibit A, Levine Video, 10:59:06-17. At this point Plaintiff explained that he went to Police Academy, but he is not a Police Officer in the traditional sense, seeming to try to provide clarity that he is an auxiliary Police Officer. Exhibit A, Levine Video, 10:59:17-22; See Afanador Cert., Exhibit C, Shaparov Dep., 34:12-24. Defendant Levine then asked are you a Police Officer, and Plaintiff said "yes but not under New York State law" finally understanding Defendant Levine was asking whether Plaintiff was a full-time paid and commissioned Police Officer.  Id. Plaintiff stated, "I am," but was interrupted by Defendant Levine. Exhibit A, Levine Video, 10:59:22-29. At this point, it is evident that the Plaintiff was attempting to clarify his position as an Auxiliary Police Officer. At some point prior to his arrest, Plaintiff provided proof that he was an Auxiliary Police Officer with the rank of sergeant with the New York Police Department. Afanador Cert., Exhibit B, Levine Dep., 72:1-9; See Exhibit B, Identifications. Defendant Conboy confirmed Plaintiff's position with the NYPD. This detail highlights a significant oversight in questioning. Defendant Levine did not clearly ask Plaintiff whether he was a full-time, paid, and commissioned police officer or a volunteer police officer. This distinction is crucial, as it reflects a lack of thorough investigation into Plaintiff's actual status, which could have affected the determination of probable cause for the arrest. The absence of this inquiry raises questions about the validity of the assumptions made by the officers during the incident. See Exhibit A, Levine Video, Generally.

During his booking and processing at the precinct, Mr. Shaparov testified that he overheard Officer Levine discussing his deformity with another officer (Afanador Cert., Exhibit C, Shaparov Dep., 122:24-124:14). Specifically, Officer Levine remarked on Mr. Shaparov's deformity, insinuating that it was a reason he could not be in law enforcement. This discussion occurred while

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Mr. Shaparov was in a cell, able to hear Officer Levine and the other officer laughing about his condition. Id. Additionally, Officer Levine joked about how he would fingerprint Mr. Shaparov given his deformity, to which Mr. Shaparov explained the procedure, having been fingerprinted before for various licenses. Id. Despite Mr. Shaparov's cooperative demeanor but he was humiliated by the experience. Id; Afanador Cert., Exhibit F, Berrill Report, Generally. Officer Levine, along with another officer present, mocked Mr. Shaparov's condition during the fingerprinting process, treating his physical disability with derision and suggesting it made him unfit for his professional role. Id. This behavior could potentially be interpreted as causing emotional distress or humiliation to Mr. Shaparov. Afanador Cert., Exhibit F, Berrill Report, Generally; Afanador Cert., Exhibit C, Shaparov Dep., 126:8-25.

## III.    LEGAL STANDARD

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.* at 250.

When determining the presence of a genuine issue of material fact, the court's role is not to weigh the evidence; instead, all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prod. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, "the mere existence of a scintilla of evidence," without more, will not give rise to a genuine issue for trial. *Anderson*, 477 U.S. at 252. In the face of such evidence, summary judgment is still appropriate "[w]here the record ... could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "Summary judgment motions thus require judges to

'assess how one-sided evidence is, or what a "fair-minded" jury could "reasonably" decide.'"
*Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) (quoting *Anderson*, 477
U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the
basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to
interrogatories, and [*9] admissions on file, together with the affidavits, if any,' which it believes
demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.
317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for
summary judgment [has been] made, the adverse party 'must set forth specific facts showing that
there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

## IV.    FALSE ARREST AND FALSE IMPRISONMENT

False arrest, malicious prosecution, and false imprisonment—require a plaintiff to show that
the underlying arrest was not supported by probable cause in order to survive summary judgment.
See *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). False arrest claims
vindicate the right to be free from arrest except on probable cause. *Orsatti v. New Jersey State
Police*, 71 F.3d 480, 483 (3d Cir. 1995).  A party must show an absence of probable cause to win
a claim for malicious prosecution. *Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).
Furthermore, an arrest based on probable cause cannot become the source of a claim for false
imprisonment *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). "[P]robable cause
to arrest exists when the facts and circumstances within the arresting officer's knowledge are
sufficient in themselves to warrant a reasonable person to believe that an offense has been or is
being committed by the person to be arrested." *Orsatti*, 71 F.3d at 483. Ordinarily, the existence
of probable cause is a factual issue for the jury. See *Halsey v. Pfeiffer*, 750 F.3d 273, 300 (3d Cir.
2014). However, a court may grant summary judgment if "no genuine issue of material fact exists

as to whether" there was probable cause. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997). In this case, Defendants have not established that they had probable cause to arrest the Plaintiff.

**A. Probable cause to issue citations for traffic violations did not provide the individual defendants probable cause to arrest Mr. Shaparov.**

Plaintiff faced a criminal charge of "impersonating a law enforcement officer" and two traffic violations: "failure to keep right" (N.J. Stat. Ann. § 39:4-82) and "safety glass requirement" for tinted windows (N.J. Stat. Ann. § 39:3-75). The penalty for "failing to keep right" under N.J. Stat. Ann. § 39:4-82 or under "N.J. Stat. Ann. § 39:4-88 (West) "shall be a fine of not less than $100 or more than $300. In addition to any fine that may be imposed, a surcharge of $50 shall be imposed on each person found guilty of a violation of R.S. 39:4-82 or R.S. 39:4-88." N.J. Stat. Ann. § 39:4-88.1. The penalties for violating the safety glass requirement as also limited to fines ranging from $100 to $5,000 .N.J. Stat. Ann. § 39:3-75.3. None of the traffic violations in this case impose a penalty of incarceration. Therefore Defendant's arguments argument is without merit where they claim that probably cause to conduct traffic stop for violation of "failing to keep right" impacted the probable cause component to arrest Plaintiff. As set forth in this branch of Plaintiff's opposition, even if Plaintiff pled guilty to all of the traffic violations he was charged with hereunder, none of the penalties involved incarceration and therefore, there remains a factual dispute as to whether Plaintiff was falsely arrested and incarcerated without probable cause to do so.

**B. Probable cause did not exist to arrest Plaintiff for impersonating a law enforcement officer where Plaintiff is actually a law enforcement officer with the state of New York, and the NYPD**

Plaintiff in this case is being charged with impersonating a law enforcement official. A person commits a crime of the fourth degree if he falsely pretends to hold a position as an officer or

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

member or employee or agent of any organization or association of law enforcement officers with purpose to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense. N.J. Stat. Ann. § 2C:28-8. N.J. Stat. Ann. § 2C:28-8(b). Defendants properly point out that this above stated New Jersey code is modeled after the Model Penal Code. Under New Jersey law "[w]hen a provision of the Code is modeled after the MPC, it is appropriate to consider the MPC and any commentary to interpret the intent of the statutory language."*State v. Robinson*, 92 A.3d 656, 606 (N.J. 2014). § 241.9. Impersonating a Public Servant., Model Penal Code § 241.9 provides "[a] person commits a misdemeanor if he falsely pretends to hold a position in the public service with purpose to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense to his prejudice." The MPC Commentaries explain the aim of the statute "is to prevent prejudicial reliance upon pretense of public authority" and thus protect individual citizens against fraud "that may be accomplished by creating a false impression" of such authority. Model Penal Code and Commentaries, cmt. 2 on § 241.9. Impersonating a Public Servant., Model Penal Code § 241.9 at 194-95 (1980). The Commentaries explain that because the MPC provision is focused on the actor's purpose to induce reliance by another, "the Model Code provision would cover an actor who pretended to hold a position in the public service in order to secure private credit." *Id.* at 195. Thus "[t]he Model Code takes the position that impersonation of a public servant to achieve private gain should be covered, even if it does not involve acts under pretense of official authority" and excludes one "who acts in the false capacity of a public servant but without intent thereby to harm anyone." *Id.* at 196. In addition to the persuasive authority of the Model Code Commentaries, the statute's plain language makes clear the "official authority" referenced in the statute is not "the power of law enforcement officers to make arrests, to seize, and to search" as defendant asserts. See *State v. Gandhi*, 989 A.2d 256, 176 (N.J. 2010) (noting the best indicator of legislative intent is most often the plain language of the statute). The language that makes that obvious is the inclusion of "member[s] or employee[s] or agent[s] of any organization or association of law enforcement officers" among those it is a crime to impersonate, as not all possess the law enforcement authority to search, seize or make

arrests. State v Gordon, 2019 N.J. Super. Unpub. LEXIS 1642, at *11 [Super Ct App Div July 17, 2019, No. A-4517-16T2]).

1. **Plaintiff did not impersonate a law enforcement officer since he is a Medicaid Investigator for the State of New York**

The first prong of the analyzing whether there was probable cause to arrest Plaintiff for impersonating a law enforcement officer requires a determination that Plaintiff falsely pretended to hold a position as "an officer or member or employee or agent of any organization or association of law enforcement officers." N.J. Stat. Ann. § 2C:28-8.  In this case it is undisputed that Plaintiff was asked "where are you on the job." Exhibit A, Levine Video, 10:56:33-38. Plaintiff answered that he was on the job for New York State. Defendant Levine then asked, "do you have I.D. for the job." Exhibit A, Levine Video, 10:56:35-45.  Plaintiff then told the officers that "I am actually on a government job…employee," and during this questioning displayed his Medicaid Investigator badge. Exhibit A, Levine Video, 10:56:43-51.  But it is clear that the badge was shown early on when Defendant Levine was questioning about where Plaintiff was working. Exhibit A, Levine Video, 10:56:33-38. In this case Plaintiff answered accurately as to his position with New York state Medicaid Investigations.

It is further undisputed that Bergen County Prosecutors took into account that Plaintiff was in fact a law enforcement officer for the  New York State Office of the Medicaid Inspector General (Afanador Cert., Exhibit I, Bates Stamp Number SONJ-PIPPD-172). As a result, Bergen County Prosecutors downgraded and dismissed the criminal charge of impersonating a law enforcement officer. See Afanador Cert., Exhibit I, Bates Stamp Number SONJ-PIPPD-171. Therefore, Plaintiff could not be charged with impersonating a law enforcement officer where he  was actually a law enforcement officer for the State of New York.

2. **Plaintiff did not impersonate a Police Officer where he is an Auxiliary Police Officer member of the NYPD**

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Again applying the first prong of the analysis of whether Defendants had probable cause to arrest Plaintiff for impersonating a law enforcement officer, they fail to show that Plaintiff Shaparov indeed attempted to impersonate a police officer. As shown above, when Plaintiff was asked whether he was on the job, Plaintiff explained he was on the job with the state of New York, that he was on a government job as an employee, and continued to explain his role although at some point his communication became inaudible in the video.  Exhibit A, Levine Video, 10:56:49-51. It is undisputed that at some point that Defendant shifted his questioning and asked whether Plaintiff was a Police Officer, and a Cop. Exhibit A, Levine Video, 10:56:50-57. This shift in questioning seems to be separate and apart from the questions and answers given about where Plaintiff was on the job. Id. During this line of questioning Plaintiff seems to be giving a narrative and not just a "yes" answer. Id..  Plaintiff through questioning from Defendant Levine acknowledged that he went to New York State police academy.  Id. Defendant Levine asked are you a Police Officer, and Plaintiff said "yes but not under New York State law" finally understanding Defendant Levine was asking whether Plaintiff was a full-time paid and commissioned Police Officer.  At some point prior to his arrest, Plaintiff was asked to provide I.D. that he was a police officer. Plaintiff began looking through his badge pouch and provided proof that he was an Auxiliary Police Officer with the rank of sergeant with the New York Police Department. Exhibit A, Levine Video, 11:23:26-40; See Exhibit B, Identifications. Despite the I.D. listing Plaintiff's title as "Auxiliary Police Officer," Defendant Levine continues to insist that the I.D. "still does not say you are a Police Officer." Exhibit A, Levine Video,11:23:51-59; Exhibit B, Identifications. This is a purposeful and complete disregard for the facts in front of him. Around this time the individual defendants confirmed by calling the NYPD numbers on the back of the auxiliary officer I.D. card that Plaintiff is in fact an Auxiliary Police Officer Sergeant prior to arresting him. Exhibit A, Levine Video, 11:25:00-50.

All of this supports that before arresting Plaintiff Shaparov for impersonating a police officer, the individual defendants were well aware of his status as an Auxiliary Police Officer with the NYPD. Thus, there was no probable cause for his arrest. If it is Defendants argument that

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiff was attempting to impersonate a police officer with full law enforcement authority, this is not supported by the record, nor is supported by law that this is a crime. In fact the Model Code Commentaries, makes clear the "official authority" referenced in the statute is not "the power of law enforcement officers to make arrests, to seize, and to search." See *State v. Gandhi*, 989 A.2d 256, 176 (N.J. 2010)

The Defendant cite to numerous cases in support of their motion which are easily distinguishable from the instant matter. The Defendants cite cases where the accused are representing themselves to be something they are not. See *State v. Gordon*, No. A-4517-16T2, 2019 N.J. Super. Unpub. LEXIS 1642 (where the defendant pretended to be a Detective with the police department, and had prior convictions for impersonating a police officer); State v Sanford, 2010 N.J. Super. Unpub. LEXIS 3113, at *2 [Super Ct App Div Dec. 28, 2010, No. A-2237-09T2 (defendant was pulled over driving a vehicle almost identical to an unmarked police vehicle, with tinted windows, a police interceptor emblem on the rear of the car, a red emergency lamp on the dashboard, and represented himself to be a township police officer where he was not a police officer). Defendants cite a case more analogous to the instant matter in *Frohner v. City of Wildwood*. In this case an undercover FBI agent was provided his credentials as an FBI agent, and was arrested due to suspicion that his credentials were fake. *Frohner v City of Wildwood*, 2008 US Dist LEXIS 97536, at *13 [DNJ Dec. 1, 2008, No. 07-1174 (JBS)]. The Officer's later confirmed that the FBI credentials were in fact authentic. The officers in the *Frohner* released the agent after his identity was confirmed. The Court denied summary judgement in that case finding that there were disputes as to whether the officers had probable cause to arrest the FBI agent. In this case the Defendants confirmed that Plaintiff was a member of the NYPD as an auxiliary police officer (with identification bearing this information) yet they still arrested Plaintiff. The lack of probable cause to arrest Plaintiff for impersonating a police officer in this case is clear where Plaintiff was in fact an Auxiliary Police Officer, with I.D. showing he was an Auxiliary Police Officer.

### 3. Plaintiff did not attempt to induce Defendant's reliance even if Plaintiff identified as a police officer

Probable cause for an arrest under N.J. Stat. Ann. § 2C:28-8(b), which criminalizes impersonating a law enforcement officer, requires not only that the individual falsely claim to hold a position of authority but also that they do so with the intent to induce another to submit to such pretended authority or to act in reliance upon that pretense. This statutory requirement aligns with the Model Penal Code's emphasis on the necessity of an overt act intended to secure reliance on the false representation (§ 241.9. Impersonating a Public Servant., Model Penal Code § 241.9).

In *State v. Cantor*, 221 N.J. Super. 219, 534 A.2d 83 (App. Div. 1987), the court upheld a conviction for impersonation where the defendant, a newspaper reporter, falsely represented herself as a public official to obtain information, demonstrating the necessity of an overt act or conduct intended to induce reliance on the false representation. In contrast, Mr. Shaparov's actions were devoid of any such intent or overt act to induce the officers to rely on a pretended authority. His presentation of the Medicaid Investigator badge and auxiliary police officer identification was consistent with his actual roles, lacking any deceptive purpose aimed at misleading the officers. The video evidence corroborates that Mr. Shaparov clearly identified himself as being on a government job for New York State and presented his identification, which accurately reflected his position as a Medicaid Investigator and Auxiliary Police Officer. Exhibit A, Levine Video, 10:56:33-38.

Given these facts, the lack of any overt act intended to induce reliance negates the existence of probable cause for Mr. Shaparov's arrest on charges of impersonating a law enforcement officer. Without evidence of such intention or conduct, the defendants' reliance on this charge is unsupported both factually and legally, warranting the denial of their motion for summary judgment on these grounds.

For these reasons the Defendants motion should be denied as it relates Plaintiff's § 1983 claims for False Arrest and False Imprisonment.

## V.     SUPERVISORY LIABILITY AND FAILURE TO INTERVENE

**A.  Sergeant Kimbro bears supervisory liability for allowing Police Officer Levine to falsely arrest Plaintiff and commit other constitutional violations against him**

One theory under which a supervisor may be personally liable under § 1983 for a subordinate's unconstitutional acts if the supervisor "participated in violating the plaintiffs rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). The Third Circuit has held that "deliberate indifference" in the context of failure to supervise context requires a showing of both (1) "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents," and (2) "circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998); see also *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (stating that failure to train "can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations"). Thus, "…a claim for failure to supervise requires a showing that the supervisors were on notice—either actual or based on a prior pattern—that their allegedly inadequate supervision might lead to a constitutional violation." *Drake v. Andruczyk*, 2011 US Dist LEXIS 40209, at *19 (D.N.J. Apr. 13, 2011).

The record clearly indicates that in the Palisades Interstate Parkway Police Department, sergeants act as supervisors for rank-and-file police officers. Afanador Cert., Exhibit D, Kimbro Dep., 57:14-16. It is undisputed that on March 3, 2020, Defendant Kimbro was acting Sergeant and Supervisor for the Palisades Interstate Parkway Police Department. Afanador Cert., Exhibit D, Kimbro Dep., 73:2-24. Defendant Kimbro was present at the scene where Defendant Levine

had detained Plaintiff Shaparov. Afanador Cert., Exhibit D, Kimbro Dep., 74:11-17. Defendant Kimbro was present when Defendant Levine explained Plaintiff "handed me his badge," and "he handed me that stupid identification card from New York," referencing the NYPD Auxiliary Police Officer identification card. Exhibit A, Levine Video, 11:15:07-18. Defendant Kimbro was then handed Plaintiff's identifications for review. Exhibit A, Levine Video, 11:15:40-55. Defendant Levine remarks that the identifications looked legitimate. Id. Another officer confirmed that Plaintiff was indeed a Medicaid inspector upon examining Plaintiff's identification. Id. Defendant Kimbro is observed in the video closely inspecting Plaintiff's badge and I.D.s. Exhibit A, Levine Video, 11:15:14-19. All the individual defendants, including Sergeant Kimbro, gathered together to verify the authenticity of Plaintiff's Auxiliary Police Officer identification card by calling the numbers on the back. Exhibit A, Levine Video, 11:25:00-50. Despite the I.D. indicating Plaintiff's title as "Auxiliary Police Officer," Defendant Levine persisted in asserting that the I.D. "still does not say you are a Police Officer," reflecting a deliberate and complete disregard for the information presented. Exhibit A, Levine Video,11:23:51-59. Around this time, confirmation was received that Plaintiff was indeed an Auxiliary Police Officer Sergeant with the NYPD, working out of the 67th Precinct. Id.  Despite receiving confirmation that Plaintiff's identification as an Auxiliary Police Officer with the NYPD was authentic, Defendant Kimbro allowed Defendant Levine to arrest Plaintiff.

Defendant Kimbro as the person in charge, had contemporaneous knowledge that Plaintiff was in fact a Police Officer with authentic identification designating him as an auxiliary police officer. Defendant Kimbro was aware of this fact and that Defendant Levine lacked  probable cause to arrest Plaintiff after confirming his status as an Auxiliary Police Officer with the NYPD. Defendant Kimbro knew Plaintiff's badge and I.D.s were legitimate. After reviewing the I.D.s (Exhibit A, Levine Video, 11:15:14-19), Defendant Kimbro jokingly remarked to the other

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

officers, "I want to know how many people would have let him go." Exhibit A, Levine Video, 11:16:33-41. This comment indicates that he recognized the legitimacy of Plaintiff's identifications, yet still acquiesced in his subordinate's violations. This is further supported by evidence that Defendant Kimbro had previously made at least one arrest where he confirmed the authenticity of an NYPD auxiliary police identification. Afanador Cert., Exhibit D, Kimbro Dep., 42:10-43:20. In that incident, the individual identified himself as a police officer, and Sgt. Kimbro testified that he verified the auxiliary police officer I.D. and confirmed its authenticity, although the individual was no longer with the NYPD. Id. When asked if he would have arrested the individual for impersonation had he still been an active auxiliary police officer, Defendant Kimbro indicated that the individual would have been arrested only for the drugs found in his car. Id. This demonstrates that Defendant Kimbro was well aware that an Auxiliary Police Officer with the NYPD could not be arrested for impersonating a public official under New Jersey law merely for identifying themselves as a police officer.

Therefore, as Defendant Kimbro was at the scene of Plaintiff's arrest and permitted Plaintiff to be arrested for impersonating a public official or law enforcement officer without probable cause, the evidence presented is sufficient to create a genuine issue for a trier of fact to consider at trial. For these reasons Defendants' motion should be denied as to this branch of their summary judgment motion to dismiss.

**B. Sergeant Kimbro bears liability for failing to intervene and protect Plaintiff from being falsely arrested and maliciously prosecuted without probable cause**

To establish an officer's liability for failing to intervene, a plaintiff must demonstrate that an underlying constitutional right was violated, that the officer had a duty to intervene, and that the officer had a realistic and reasonable opportunity to do so. *White v. City of Vineland*, 500 F. Supp. 3d 295, 305–06 (D.N.J. 2020). At summary judgment, all a plaintiff must demonstrate is

that an officer was in the vicinity when a constitutional violation occurred in order to show an opportunity to intervene. *Id.* at 306.

In this case, the record clearly indicates that Sergeant Kimbro was present at the scene of the Plaintiff's traffic stop and subsequent investigation concerning his status as an Auxiliary Police Officer with the NYPD. Sergeant Kimbro had the opportunity to review the Plaintiff's identifications and made remarks suggesting he recognized their authenticity. Exhibit A, Levine Video, 11:15:14-19; 11:16:33-41. Furthermore, Sergeant Kimbro was present when the NYPD confirmed that the Plaintiff held the rank of sergeant as an Auxiliary Police Officer. Exhibit A, Levine Video, 11:25:00-50. Despite this confirmation, Sergeant Kimbro not only permitted but also gave Defendant Levine permission to arrest the Plaintiff, which constituted a violation of the Plaintiff's rights given the absence of probable cause for the charge of impersonation. Exhibit A, Levine Video, Generally.

Therefore, the evidence presented is more than sufficient to create a genuine issue of material fact for a jury to consider at trial, and the Defendants' motion for summary judgment on this claim should be denied.

## VI.    MALICIOUS PROSECUTION

### A. There are sufficient facts to support a claim for Malicious Prosecution under Section 1983 and New Jersey state law

To state a claim for malicious prosecution under § 1983, a plaintiff must show that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered [a] deprivation of liberty consistent [**49] with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). The element of

- 15 -

malice may be inferred from a lack of probable cause. *Robinson v. Jordan*, 804 F. Supp. 2d 203, 206 (D.N.J. 2011). Under New Jersey law the tort of malicious prosecution has only four of the five elements necessary to establish a malicious prosecution claim under Section 1983. Plaintiff need not show that he suffered a deprivation of liberty. See *LoBiondo v. Schwartz*, 199 N.J. 62, 970 A.2d 1007, 1022 (2009); (reciting first four elements for a malicious prosecution claim); *Lind v. Schmid*, 67 N.J. 255, 337 A.2d 365, 368 (1975).

1.   **There was a favorable termination despite a mixed Verdict**

In relation to favorable termination, the Third Circuit has held that a mixed verdict, such as an acquittal accompanied by a contemporaneous conviction at the same proceeding, can be considered a favorable termination when the circumstances—both the offenses as stated in the statute and the underlying facts of the case—indicate that the judgment as a whole reflects the plaintiff's innocence. *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009), *abrogated by Thompson v. Clark*, 596 U.S. 36, 142 S. Ct. 1332, 212 L. Ed. 2d 382 (2022). The purpose of the favorable termination requirement is to prevent the claimant from succeeding in a tort action after having been convicted in the underlying criminal prosecution, thereby avoiding the creation of two conflicting resolutions arising out of the same or identical transaction. *Heck v. Humphrey*, 512 U.S. 477, 484, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). The analysis is very fact specific when trying to determine whether a mixed verdict reflects a plaintiff's innocence. The judgment must indicate the plaintiff's innocence of the alleged misconduct underlying the offenses charged. *Kossler*, 564 F.3d 181;*Jackson v. Nassan*, No. 2:08CV1054, 2009 WL 2707447, at *4 (W.D. Pa. Aug. 26, 2009); *Piazza v. Lakkis*, No. 3:11-cv-2130, 2012 WL 2042671, at *31 (M.D. Pa. June 5, 2012). When a charge for which the individual is convicted arises from the same course of conduct that led to charges of which the individual was acquitted, it cannot be held that the verdict reflects the plaintiff's innocence of the acquitted charges. See *Kossler*, 564 F.3d at 189.

- 16 -

In the instant matter Plaintiff was charged with a criminal charge of "impersonating a law enforcement officer," and two traffic violations, including, "failure to keep right" (N.J. Stat. Ann. § 39:4-82), and "safety glass requirement" for tinted windows (N.J. Stat. Ann. § 39:3-75). These charges were initiated by an affidavit and criminal complaint sworn by Defendant Levine. Exhibit C, Police Complaint & Affidavits, Bates Stamp No. SONJ-PIPPD-009-010, SONJ-PIPPD-076-082. It is undisputed that the Plaintiff pled guilty to the traffic infraction of "failure to keep right," which is a civil charge, not a criminal one. The Defendants argue that the Plaintiff's guilty plea to the traffic infraction bars his malicious prosecution claims, but this argument is without merit. In this case Plaintiffs actions in driving a New York state vehicle in the left lane of the highway, which allegedly had dark tint is what led to him being charged with the aforementioned traffic infractions. After the Plaintiff was stopped, it is alleged that he identified himself as a Police Officer. This is a separate and distinct act, unrelated to his driving actions, which led to the Plaintiff being charged with impersonating a public official. Unlike the situation *Kossler*, where the charges for aggravated assault and disorderly conduct arose from the same facts of a fight with a security guard, the instant matter shows that the facts leading to the Plaintiff's traffic infractions are separate and apart from those leading to the charge of impersonation.

### 2. Probable cause did not exist

#### i. The record shows proof to Plaintiff's innocence

The Bergen County Prosecutor's decision to downgrade and dismiss the criminal charge of impersonating a public official, while acknowledging Plaintiff's employment with the Office of the Medicaid Inspector General (Afanador Cert., Exhibit I, Bates Stamp Number SONJ-PIPPD-172), constitutes a favorable termination. This is crucial for establishing a claim of malicious prosecution under Section 1983. Additionally, the traffic infraction for excessive tint was dismissed upon proving that the vehicle Plaintiff was driving was a New York State official vehicle

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

with legally compliant tinted windows under New Jersey law. Exhibit D, Court Documents, Bates Stamp No. SONJ-PIPPD-172-177.[1] This evidence, along with the Bergen County Prosecutor's acknowledgment of these exculpatory documents, effectively rebuts the Defendants' argument that Plaintiff's plea to one traffic infraction amounted to an acknowledgment of probable cause for all charges.

### ii. The Plea Agreement did not establish probable cause

Regarding the plea agreement, Defendants argue that Plaintiff's defense counsel stipulated to probable cause; however, there is no record evidence supporting this claim. The document referenced by Defendants with a notation "stip to p/c" lacks Plaintiff's attorney's signature. Afanador Cert., Exhibit I, Complaint Summons, Bates Stamp No. SONJ-PIPPD-172. The section titled "Adjudication (see code)" includes a finding of "P," which, according to the finding codes, indicates that the criminal charge was dismissed by plea agreement. Id. No transcript evidences any stipulation to probable cause. Furthermore, the official Plea Agreement request clearly indicates the charges for Safety Glass Requirement and Impersonating a Public Official were dismissed, denoted by the letter "D," and were not merged into the "failure to keep right" traffic infraction, which would be indicated by "M." Exhibit D, Court Documents, Bates Stamp No. SONJ-PIPPD-182. Thus, Plaintiff's guilty plea to "failure to keep right" did not resolve the remaining charges, and nothing in the plea agreement suggests a stipulation to probable cause.

Defendants argue that probable cause is established when a criminal defendant pleads guilty to an offense, even without a stipulation to probable cause in the plea agreement. However, the cases cited by Defendants do not support this argument. In *Ianuale v. Keyport Twp.*, the plea

---

[1] It should also be noted that nowhere in the video is there proof that Defendant Levine tested the vehicles windows to establish probable cause that Plaintiff's vehicle's tint levels violated New Jersey Safety Glass Requirements. See Afanador Cert., Exhibit O, Levine Video, Generally.

agreement included explicit handwritten amendments acknowledging probable cause and waiving civil action. *Ianuale v. Keyport Twp.*, No. 15-8256, 2016 WL 6043804, at *8 (D.N.J. Oct. 13, 2016). Similarly, in *Manitta v. New Jersey,* the plaintiff specifically stipulated to probable cause during the plea hearing. *Manitta v. N.J.,* No. 15-2870, 2016 WL 609476, at *3 (D.N.J. Feb. 16, 2016). In the case at bar, Plaintiff did not stipulate to probable cause in the plea agreement, nor did he stipulate to probable cause during his plea hearing. Plaintiff did not stipulate to probable cause in the plea agreement or during the plea hearing. Therefore, Defendants lack credible authority to assert that Plaintiff's guilty plea to "failure to keep right" establishes probable cause for the other charges brought against him.

Given these considerations, Defendants' motion for summary judgment should be denied, as the evidence is sufficient to create a factual issue for a trier of fact to resolve at trial regarding the state and federal claims of malicious prosecution.

## VII.   QUALIFIED IMMUNITY

While Defendants do not make any specific arguments for qualified immunity to bar the Section 1983 claims for False Arrest, False Imprisonment, and Malicious Prosecution, they do request qualified immunity to apply to the claims asserted under the NJTCA for Malicious Prosecution and Malicious Abuse of Process claims.

Generally, "[p]olice officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." *Santini v. Fuentes*, 795 F.3d 410, 416–17 (3d Cir. 2015) (quoting *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007). "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 417 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73

L. Ed. 2d 396 (1982)). "The purpose of qualified immunity is to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.' *Id.*

An "essential attribute [qualified immunity is] an entitlement not to stand trial under certain circumstances," and qualified immunity is "an immunity from suit rather than a mere defense to liability." *In re Mushroom Direct Purchaser Antitrust Litig.*, 655 F.3d 158, 164 (3d Cir. 2011) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985)) (alterations in original). Because the individual defendants in this case are police officers, the Court must therefore consider whether the Defendants are entitled to summary judgment on Plaintiff's claims under the protection afforded by qualified immunity, before proceeding to consideration of the other, merits arguments in support of Defendants' motions.

Courts in the Third Circuit perform a two-step inquiry to determine whether a particular government official is entitled to summary judgment based on qualified immunity. "First, we ask whether the facts—taken in the light most favorable to the nonmoving party—show that a government official violated a constitutional right." *Santini*, 795 F.3d at 417 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, we ask whether that right was clearly established at the time of the official's actions. *Id.*

First, the Court must address whether "the officer's conduct violated a constitutional right." *Id.* at 201. As the Court of Appeals noted in *Curley*, 499 F.3d 199, the first step of the analysis is "not a question of immunity at all, but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity." *Curley*, 499 F.3d at 207. "If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the analysis and asks whether immunity should nevertheless shield the officer from liability." *Curley*, 499 F.3d at 207 (quoting *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)). In the second step of the analysis, the Court addresses "whether the right that was violated was clearly

established, or, in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier*, 533 U.S. at 202). In the instant matter the reasonableness of the officer's conduct turns on whether it would have been clear to a reasonable officer there was no probable cause to arrest." *Gilles v. Davis*, 427 F.3d 197, 205 (3d Cir. 2005).

In addition to federal qualified immunity, New Jersey law provides public employees with immunity from civil liability through the New Jersey Tort Claims Act (NJTCA). Under N.J. Stat. Ann. § 59:3-3 , a public employee is not liable for an injury resulting from the exercise of judgment or discretion vested in him. However, this immunity does not protect actions that constitute willful misconduct (N.J. Stat. Ann. § 59:3-14 ). The analysis under New Jersey law is akin to that of federal qualified immunity, focusing on whether the officer's conduct violated a clearly established right and whether it was objectively reasonable for the officer to believe their actions were lawful. See *Brown v. State*, 230 N.J. 84, 98, 165 A.3d 735, 111 (2017) (stating that New Jersey qualified immunity follows the same principles as federal law).

**A.    A reasonable officer would not believe he had probable cause to arrest an Auxiliary Police Officer for identifying as a police officer**

In the first step of this analysis, the Defendants do not dispute that they subjected the Plaintiff to a "seizure" as defined by the Fourth Amendment. Therefore, the Court's evaluation of whether the Plaintiff has a valid Section 1983 claims depends on whether the arrest and seizure of Plaintiff was reasonable. See *Berg*, 219 F.3d at 269. "A warrantless arrest of an individual in a public place for a felony . . . is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). The Court of Appeals explained, "[p]robable cause means facts and circumstances that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has

committed, is committing, or is about to commit an offense." *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 363 (3d Cir. 2003) (internal quotations and citations omitted). In other words, "[s]o long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance" that Plaintiff was impersonating a law enforcement officer in violation of N.J. Stat. Ann. § 2C:28-8(b). *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001) (citation omitted).

While Defendants offer no specific facts supporting the branch of their motion requesting that Qualified Immunity be applied to Section 1983 claims, it seems apparent that the Defendants recitation of facts (in other parts of their motion) seem to conclude Plaintiff should not have affirmed to be a Police Officer where he was an Auxiliary Police Officer. And that although his NYPD identification card identifies him as an auxiliary "police officer," Defendants had probable cause to arrest Plaintiff for impersonation. This play on semantics is not lost here. At no time did Plaintiff aver to be a full-time working police officer, only that he may have affirmed to be a police officer. If in fact the individual defendants confirmed that he is an Auxiliary Police Officer with the NYPD, and that he works out of the 67th pct, with the rank of a Sargeant, it is clear that a reasonable police officer in the individual defendants' position would not believe that they had clear probable cause to arrest the Plaintiff for impersonating a police officer. This is supported by Sargeant Kimbro's reluctance after having viewed the Plaintiff's I.D.'s. He states while laughing "I want to know how many people would have let him go." Exhibit A, Levine Video, 11:16:33-41. Furthermore, from Defendant Kimbro's own testimony he would not arrest an active Auxiliary Police Officer for stating that he is a police officer.

The Court of Appeals has stated on numerous occasions that the question of "probable cause in a section 1983 damage suit is one for the jury." *Montgomery*, 159 F.3d at 124. In this case, Defendants argue in other parts of their motion that Defendant Levine's conversation with

Plaintiff supported Defendants' suspicion that Plaintiff was impersonating a Police Officer. However, it is by no means apparent as a matter of law that this conversation alone demonstrated a "substantial chance of criminal activity on the [Plaintiff's] part." *Camiolo*, 334 F.3d at 363. This is especially true where the Defendants confirmed that Plaintiff was in fact a Sergeant Auxiliary Police Officer with the NYPD.

   Nor can the Court conclude, at the second step of the qualified immunity analysis, that the individual defendants are entitled to qualified immunity under the more forgiving "arguable probable cause" standard. *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007). The facts upon which Defendants rely in arguing that there was probable cause to arrest Plaintiff themselves raise factual questions as to "whether there was any reasonable basis to suppose there was probable cause," which precludes the entry of summary judgment on this record. *Gilles*, 427 F.3d at 205. Especially when weighed in the light of Sergeant Kimbro's experience with confirming he authenticity of NYPD auxiliary police officer I.D.'s, and the Defendants' pre-arrest confirmation that Plaintiff was actually an Auxiliary Police Officer with the NYPD.

   Given the pre-arrest confirmation that Plaintiff was an Auxiliary Police Officer with the NYPD, a reasonable officer would not have believed there was probable cause to arrest Plaintiff for impersonation. Defendants have failed to demonstrate as a matter of law that they had probable cause or arguable probable cause to believe that Plaintiff was impersonating a police officer in violation of N.J. Stat. Ann. § 2C:28-8(b). Therefore, Defendants' motion for summary judgment as to Plaintiff's claims under federal and New Jersey law based on Qualified Immunity should be denied.

## VIII.   Punitive Damages

   A plaintiff may recover punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the

- 23 -

federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); see also *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989) ("[F]or a plaintiff in a section 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard.").

In this case, the evidence presented demonstrates that the defendants acted with at least a reckless or callous indifference to Mr. Shaparov's rights. The lack of probable cause for Mr. Shaparov's arrest is evident, as detailed in previous sections. Probable cause requires facts and circumstances within the officer's knowledge sufficient to warrant a reasonable belief that an offense has been committed. *Orsatti*, 71 F.3d at 483. Despite clear evidence that Mr. Shaparov was an Auxiliary Police Officer with the NYPD, confirmed through identification and corroborated by communication with the NYPD (Afanador Cert., Exhibit B, Levine Dep., 72:1-9; See Exhibit B, Identifications), the defendants proceeded with an arrest for impersonating a law enforcement officer. This disregard for the factual evidence at hand highlights a reckless indifference to the truth and Mr. Shaparov's rights.

Moreover, the conduct of the officers at the precinct, where they mocked Mr. Shaparov's disability and questioned his capacity to serve as a police officer due to his deformed hand (Exhibit E, Picture of Hand; Afandor Cert., Exhibit C, Shaparov Dep., 122:24-124:14), underscores a callous disregard for his dignity and federally protected rights. Such behavior can be considered discrimination under the Americans with Disabilities Act, which prohibits discrimination based on disability. 42 U.S.C. § 12132 (2024); see also *Sch. Bd. of Nassau Cnty., Fla. v. Arline*, 480 U.S. 273, 107 S. Ct. 1123, 94 L. Ed. 2d 307 (1987) (discussing the importance of treating individuals with disabilities with respect and ensuring their rights are protected).

The Defendants argue they are entitled to immunity under the NJTCA, claiming both objective and subjective good faith in their actions. However, the evidence and legal precedents suggest otherwise, highlighting a pattern of conduct that undermines their claims to such protections. The Defendants assert that their actions were objectively reasonable, yet the facts demonstrate a clear violation of Mr. Shaparov's constitutional rights. The officers arrested Mr. Shaparov despite confirming his status as an Auxiliary Police Officer with the NYPD, negating probable cause that Defendant Levine needed prior to arresting Plaintiff (see *Orsatti*, 71 F.3d at 483). The Third Circuit has emphasized that probable cause must be based on facts and circumstances within the officer's knowledge that are sufficient to warrant a reasonable belief that an offense has been committed. See *Beck v. State of Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964). The officers' disregard for this confirmation demonstrates a violation of clearly established Fourth Amendment rights, which are well-known to reasonable officers. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

The Defendants claim they acted with subjective good faith, yet their actions suggest otherwise. The officers mocked Mr. Shaparov's physical disability (See Exhibit E, Picture of Hand), a behavior that reflects callous indifference to his dignity and rights, potentially violating the Americans with Disabilities Act, 42 U.S.C. § 12132. Such conduct goes beyond negligence, constituting willful misconduct, which is not shielded by the NJTCA. *Fielder v. Stonack*, 141 N.J. 101, 661 A.2d 231, 246 (1995). Willful misconduct involves actions taken with knowledge that they are forbidden, exceeding the absence of good faith. *Castro v. New Jersey*, 521 F. Supp. 3d 509, 525 (D.N.J. 2021). Such mocking about Mr. Shaparov's hand deformity, and the difficulty to fingerprint him could not be seen to have been done in good faith. Afanador Cert., Exhibit F, Berrill Report, Generally.

- 25 -

Furthermore, the defendants' insistence on arresting Mr. Shaparov for impersonating a police officer, despite their knowledge of his actual status as a member of the NYPD bearing an I.D. that states "police officer" (albeit an "auxiliary police officer"), indicates malice or an improper motive. This satisfies the standard for malicious abuse of process, which requires showing an ulterior motive and a willful act inconsistent with the proper use of process. *Earl v. Winne*, 34 N.J. Super. 605, 112 A.2d 791 (Co. 1955).

Defendants argue their decisions were discretionary, warranting immunity. However, the actions taken went beyond discretion, involving a deliberate disregard for verified information about Mr. Shaparov's identity and role. The officers had a ministerial duty to accurately assess the situation based on available information, yet they chose to ignore verified evidence, acting outside the bounds of their discretionary authority. *Costa v. Josey*, 83 N.J. 49, 60, 415 A.2d 337 (1980). Ministerial duties are those that are absolutely certain and imperative, involving merely the execution of a task. *Smith v. New Jersey Div. of Child Prot. & Permanency*, 723 F. App'x 119, 123 (3d Cir. 2018).

The combination of these actions—arresting Mr. Shaparov without probable cause and subjecting him to ridicule—demonstrates conduct that goes beyond mere negligence or error. Instead, it reflects a level of indifference and malice that supports a claim for punitive damages. Therefore, these factors should allow Mr. Shaparov's claim for punitive damages for all state and federal claims to survive summary judgment and be evaluated by a jury, which can assess the credibility and intentions behind the Defendants' actions.

**IX. CONCLUSION**

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

For the reasons set forth above, Plaintiff respectfully submits that the Defendants motion for summary judgment should be denied and the jury be allowed to weigh the credibility of the witnesses at trial.

Respectfully submitted,

Dated: November 14, 2024
New York, New York

By: _____
O. Williams Igbokwe, Esq.
Igbokwe PLLC
*Attorneys for Plaintiff*
28 Liberty Street, 6th FL
New York, New York 10005
(347) 467-4674
will@iwlaws.com

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT