<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ALEXANDER SHAPOROV, | |
| Plaintiff, | No. 22cv1150 (EP) (LDW) |
| v. | **OPINION** |
| PIPPD P.O. MATTHEW LEVINE, *et al.*, | |
| Defendants. | |

**PADIN, District Judge.**

Plaintiff Alexander Shaporov brings this action against named Palisades Interstate Police Department ("Palisades PD") officers Matthew Levine ("PO Levine"), Timothy Conboy ("PO Conboy"), Peter Wojcik ("PO Wojcik"), Scott Bilotti ("PO Bilotti"), and Sergeant Gregory D. Kimbro, Jr. ("Sergeant Kimbro"), in their individual capacities (collectively, "Defendants"), as well as Palisades PD Doe Police Officers #1–10 and Palisades PD Supervisor Doe Police Officer #1 ("Unidentified Police Officers"). Plaintiff, a Medicaid investigator for the State of New York and auxiliary police officer with the Police Department of the City of New York ("N.Y.P.D."), alleges that Defendants violated his civil rights when they arrested him for impersonating a police officer in March 2020. *See* D.E. 1 ("Complaint" or "Compl.").

Defendants move for summary judgment as to all remaining claims in Plaintiff's Complaint. D.E. 100.[1] Plaintiff opposes. D.E. 104 ("Opposition" or "Opp."). Defendants reply. D.E. 102 ("Reply"). The Court decides the Motion without oral argument. *See* Fed. R. Civ. P.

---

[1] For ease of reference, the Court refers to D.E. 100-1, Defendants' brief in support of its motion for summary judgment, as "Motion" or "Mot." As explained in Section II, *infra*, the notice of Motion is at D.E. 100.

78(b); L. Civ. R. 78.1(b).  For the reasons set forth herein, the Court will **GRANT** Defendants'

Motion and **DISMISS** the Unidentified Defendants from this action ***with prejudice***.

I.    **FACTS**[2]

　　A.    **The Stop and Arrest**

On March 3, 2020, Plaintiff was driving a New York state-issued Ford Taurus en route to

Albany for a training related to his job as a Medicaid investigator.  Ex. C to the Certification of

Victor A. Afanador, Esq. in Support of Motion, D.E. 101 ("First Afanador Cert.") at 48:4–50:12.

At that time, Plaintiff also served as an auxiliary member of the N.Y.P.D.  *See* D.E. 100-2 ("Defs.

SUF") ¶ 19.  Per the auxiliary N.Y.P.D. regulations in place on March 3, 2020, Plaintiff was not

issued a firearm, was not permitted to make arrests, and was instructed not to apprehend

individuals he believed were criminal suspects.  *Id.*  Plaintiff's left hand has, what Plaintiff

characterizes as, a "deformity,"[3] *see, e.g.*, Ex. C to First Afanador Cert. ("Plaintiff Dep.") at 72:23–

73:4.  *See* Ex. E to the Declaration of William Igbokwe, D.E. 104-2 ("Igbokwe Decl.") (photograph

of Plaintiff's left hand).

At the time Plaintiff was driving to Albany, PO Levine was on general patrol in his vehicle

and was parked on an access road on the northbound side of the Palisades Interstate Parkway.

Defs. SUF ¶ 1.  PO Levine testified that he observed the Ford Taurus driven by Plaintiff traveling

at a high rate of speed at around 11:00 AM.  *Id.*; Ex. B to First Afanador Cert. ("Levine Dep.") at

47:24–48:12, 51:11–19, 53:2–13, 59:23–60:7.  Plaintiff remained in the left lane for approximately

---

[2] The facts in this Section, and throughout this Opinion, are undisputed unless otherwise indicated.

[3] The Court adopts the language used by Plaintiff himself to reference the physical condition of Plaintiff's left hand.

several hundred feet before PO Levine pulled out behind him, leading PO Levine to conduct a motor vehicle stop due to Plaintiff's failure to keep right. Defs. SUF ¶¶ 3–4.[4]

Though precisely what happened when PO Levine got out of his vehicle and started questioning Plaintiff is in dispute,[5] the following facts are not in dispute. Plaintiff represented to PO Levine that he was a police officer. Defs. SUF ¶ 10; Pl. Resp. to Defs. SUF ¶ 10. PO Levine responded that the form of identification from Plaintiff PO Levine reviewed was not police identification and then questioned Plaintiff about whether Plaintiff went to a police academy or carried a gun, to which Plaintiff responded "yes." Defs. SUF ¶¶ 10–11; Pl. Resp. to Defs. SUF ¶¶ 10–11. PO Levine next informed Plaintiff that PO Levine needed to see identification that showed that Plaintiff was a police officer because the form of identification PO Levine had seen did not show that Plaintiff was a police officer. Defs. SUF ¶ 12; Pl. Resp. to Defs. SUF ¶ 12. At some

---

[4] In D.E. 104-1 ("Pl. Resp. to Defs. SUF"), Plaintiff disputes that Plaintiff was in the left lane when PO Levine pulled out behind him and that PO Levine pulled Plaintiff over for failure to keep right on the basis that Ex. A to Igbokwe Decl.—PO Levine's dashcam video—"shows Plaintiff's vehicle in the right lane prior to being pulled over." Pl. Resp. to Defs. SUF ¶¶ 3–4. Even viewing the evidence in the light most favorable to him, Plaintiff has not adequately disputed these facts. As Defendants point out in their Reply, the fact that Ex. A shows that Plaintiff's vehicle was in the right lane prior to being pulled over shows only that at *one point in time* Plaintiff's vehicle was in the right lane, which is not sufficient to dispute PO Levine's sworn testimony that Plaintiff's vehicle was in fact in the left lane long enough to warrant stopping Plaintiff for failure to keep right. *See* Reply at 3–4. Moreover, Plaintiff himself testified that he was traveling in the left lane when he noticed PO Levine behind him. Plaintiff Dep. at 51:16–25. While the Court finds that Plaintiff's use of Ex. A does not create a dispute of material fact in this instance, the Court declines to exclude Ex. A as Defendants also request. Although Defendants argue that Ex. A does not appear to be the version of the dashcam video produced in discovery, *id.* at 3 n.1, they have not actually objected that Ex. A "cannot be presented in a form that would be admissible in evidence" at trial as required for exclusion at this stage of the proceedings. Fed. R. Civ. P. 56, Advisory Committee's Note to 2010 Amendment (cited by Third Circuit in *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) in reversing district court's exclusion of evidence at summary judgment). Accordingly, the Court will consider Ex. A in determining whether Plaintiff's case survives summary judgment.

[5] As explained *infra* Section IV, none of these disputes are material.

point in his questioning of Plaintiff, PO Levine asked Plaintiff, "Are you currently a police officer?" to which Plaintiff responded, "Not under New York state law." Ex. A to Igbokwe Decl. at 10:59:22–27. Over the course of the questioning, PO Levine saw forms of identification suggesting that Plaintiff worked in the New York Medicaid office and as an Auxiliary Sergeant for the N.Y.P.D. Auxiliary Police. Defs. SUF ¶¶ 9, 18; Pl. Resp. to Defs. SUF ¶¶ 9, 18.[6]

PO Levine ultimately asked Plaintiff to step out of his vehicle and proceeded to pat Plaintiff down. Defs. SUF ¶ 14. PO Levine also requested that other officers arrive at the scene, leading to the arrival of Sergeant Kimbro, PO Conboy, PO Wojcik, and PO Bilotti as backup. *Id.* Upon the arrival of the other officers, PO Levine informed Plaintiff that being a medical inspector did not make Plaintiff a police officer and noted that Plaintiff only identified himself as a medical inspector after PO Levine had finished questioning him. *Id.* ¶ 15. PO Levine also explained to the officers that Plaintiff had initially told PO Levine that Plaintiff was a police officer, went to the police academy, and carried a gun, before telling PO Levine that those representations were not true. *Id.* ¶ 16. In response to PO Levine's explanation, one of the officers stated that Plaintiff had presented himself as a police officer and should be arrested. *Id.* ¶ 17. Sergeant Kimbro believed the identification provided by Plaintiff did not show that Plaintiff had police powers and was not legitimate. *Id.* ¶ 20. Sergeant Kimbro was also of the view that Plaintiff should have identified himself as an auxiliary and stated the department for which he worked. *Id.* ¶ 23. PO

---

[6] The parties dispute whether PO Levine conducted the stop with or without knowledge of Plaintiff's deformity. *Compare* Levine Dep. at 102:3–18 (testimony from PO Levine that he did not notice Plaintiff's deformity prior to Plaintiff's arrest), *with* Pl. Resp. to Defs. SUF ¶ 5 (countering that Plaintiff testified to grabbing his credentials from the passenger seat of his vehicle to remove his driver's license, *see* Plaintiff Dep. at 55:13–54:20, which would have required the use of his hands and "most likely would have been observed by Officer Levine"). Because the Court finds that probable cause existed for Plaintiff's arrest, *see infra* Section IV.B, and Plaintiff does not dispute that probable cause for the stop existed, this dispute is not material. The Court has nevertheless included this discussion for context.

Conboy called the numbers listed on the back of one of the forms of identification Plaintiff had provided to PO Levine and confirmed that Plaintiff was an auxiliary member of the N.Y.P.D. and not, in PO Convey's view, "a cop." Ex. P to First Afanador Cert. at 22:36–22:44; Defs. SUF ¶ 21; Pl. Resp. to Defs. SUF ¶ 21.

Plaintiff was eventually handcuffed and led to PO Levine's police vehicle. *See* Defs. SUF ¶¶ 24, 27. Plaintiff testified that the handcuffs used on him were too tight and left bruises. *Id.* ¶ 24. Dashcam footage from PO Levine's vehicle establishes that Plaintiff never requested that PO Levine loosen the handcuffs. *Id.* ¶ 25.[7] Plaintiff did not undergo any medical treatment for the alleged bruises resulting from the handcuffs. Defs. SUF ¶ 26. While Plaintiff was in PO Levine's vehicle, PO Levine asked Plaintiff if he was alright, to which Plaintiff responded by asking for the window to be opened because he was hot. *Id.* ¶ 28. About eight minutes after Plaintiff requested that PO Levine open the window, PO Levine did so, which Plaintiff recognized as complying with his request. *Id.* ¶¶ 29–30. The window remained open over the course of Plaintiff's transfer to the police station until PO Levine closed it so that PO Levine and Plaintiff could better communicate. *Id.* ¶ 31. While Plaintiff testified that he believed the temperature on the date of his arrest was over 80 degrees, archived weather data from the National Weather Service shows that the temperature was between 57 and 59 degrees in Alpine, New Jersey, near the area of the arrest. *Id.* ¶¶ 32–33. Plaintiff alleges that his seatbelt in PO Levine's vehicle during his transfer to the police station was not properly secured and that he was sliding in the backset due to PO Levine speeding

---

[7] Plaintiff attempts to dispute that the footage shows that Plaintiff never requested that PO Levine loosen the handcuffs, citing "Exhibit B, Levine Video, 11:27:45–55." Pl. Resp. to Defs. SUF ¶ 25. Neither Plaintiff nor Defendants submitted the dashcam footage from PO Levine as Ex. B, but the Court assumes Plaintiff is referencing the dashcam footage from PO Levine he submitted as Ex. A to Igbokwe Decl. The time range Plaintiff references, however, does not show that Plaintiff made such a request—nor does any other portion of the dashcam footage from PO Levine. The Court therefore finds that Plaintiff has not raised a dispute with respect to this fact.

and doing U-turns, but Plaintiff never informed PO Levine that his seatbelt was not securely fastened. *Id.* ¶¶ 34–35. Plaintiff did testify, however, that he asked PO Levine to slow down and that PO Levine complied with his request. *Id.* ¶ 35.

Plaintiff also testified that after his arrival at the Fort Lee precinct with PO Levine, *see* Ex. G to First Afanador Cert. at 2, he overheard Officer Levine discussing and laughing about Plaintiff's deformity with another officer. Opp. at 3–4 (citing Plaintiff Dep. at 122:24–124:10). Plaintiff also testified that PO Levine joked about how he would fingerprint Plaintiff, after which Plaintiff explained how he had previously been fingerprinted. *Id.*

PO Levine ultimately issued Plaintiff tickets for Failure to Keep Right in violation of N.J. Stat. Ann. § 39:4-82 (Ticket No. 003339) ("Failure to Keep Right Ticket") and violation of Safety Glass Requirement under N.J. Stat. Ann. § 39:3-75 (Ticket No. 003340) ("Safety Glass Requirement Ticket"). Defs. SUF ¶ 36 (citing Ex. G to First Afanador Cert.). Plaintiff was also charged with Impersonating a Police Officer in violation of N.J. Stat. Ann. § 2C:28-8B (Complaint-Summons 0288-S-2020-000056). *Id.* ¶ 38 (citing Ex. I to First Afanador Cert. ("Initial Impersonation Complaint-Summons")).

## B.    Resolution of Tickets and Charge

On October 20, 2020, Plaintiff—represented by counsel—entered into a plea agreement before the court of the Palisades Interstate Park. Ex. K to First Afanador Cert., Requests for Admission ("RFAs") Nos. 6, 10, 12.[8] In the Complaint-Summons signed by the municipal court judge on October 20, 2020, the Impersonating a Police Officer in violation of N.J. Stat. Ann. § 2C:28-8B charge was listed as the "Original Charge" and Impersonating a Public Servant in violation of N.J. Stat. Ann. § 2C:28-8A was listed as the "Amended Charge." Ex. J to First

---

[8] For the reasons stated *infra* Section IV.B.2, the Court has deemed the RFAs admitted.

Afanador Cert. ("Revised Impersonation Complaint-Summons") at 3.  Plaintiff pled guilty to the Failure to Keep Right Ticket in exchange for the dismissal of the Safety Glass Requirement Ticket and the Revised Impersonation Complaint-Summons.  *See* RFA Nos. 10–11; Revised Impersonation Complaint-Summons.  As part of the October 20, 2020, plea agreement, Plaintiff stipulated before the municipal court to probable cause with respect to the Revised Impersonation Complaint-Summons.  *Id.* No. 13.  Plaintiff's counsel reviewed with Plaintiff on October 20, 2020, all charges, penalties, and rights implicated by the resolution of the Failure to Keep Right Ticket, Safety Glass Requirement Ticket, and the Revised Impersonation Complaint-Summons.  *Id.* No. 12.

## II.    PROCEDURAL HISTORY

On March 2, 2022, Plaintiff filed a ten-count Complaint bringing various claims under 42 U.S.C. § 1983 for false arrest (Count I), false imprisonment (Count II), unreasonable and excessive force (Count III), malicious prosecution (Count IV), failure to supervise (Count V), failure to intervene (Count IX), substantive due process violations (Count VII), procedural due process violations (Count VIII), and a *Monell* claim (Count VI).  Compl. ¶¶ 57–138.  Plaintiff also brought state law claims under the New Jersey State Civil Rights Acts ("NJCRA") for malicious abuse of process and malicious prosecution (Count X).  *Id.* ¶¶ 139–57.  Plaintiff brought each of the claims in his Complaint against Sergeant Kimbro, PO Levine, PO Conboy, PO Wojcik, PO Bilotti, Palisades PD Doe Police Officers #1–10, and Palisades PD Supervisor Doe Police Officers #1–10 (collectively, the "Officer Defendants"), the State of New Jersey, the Palisades Interstate Parkway Commission (the "Commission"), and Palisades PD.  Compl.; *see also* D.E. 35 ("MTD Opinion") (explaining that the Court could only glean that Plaintiff intended to assert each claim against every defendant).

The Commission and Palisades PD moved to dismiss the claims asserted against them, as did the Officer Defendants to the extent those claims were asserted against them in their official capacities. *See* D.E. 17. On January 11, 2023, the Court granted the motion and dismissed all claims brought against the Commission and Palisades PD, as well as those brought against the Officer Defendants in their official capacities. MTD Opinion; D.E. 36.

The Officer Defendants and the State of New Jersey subsequently answered the Complaint on March 27, 2023. D.E. 45. The parties then stipulated to the dismissal of the following claims against the following parties: (1) all claims against the State of New Jersey, (2) Plaintiff's request for injunctive relief against every defendant, (3) the false arrest (Count I) and false imprisonment (Count II) claims against Sergeant Kimbro, (4) the unreasonable and excessive force (Count III), malicious prosecution (Count IV), substantive due process (Count VII), procedural due process (Count VIII), malicious abuse of process/malicious prosecution (Count X) claims against Sergeant Kimbro, PO Conboy, PO Wojcik, and PO Bilotti, (5) the failure to supervise (Count V) and failure to intervene (Count IX) claims against PO Levine, PO Conboy, PO Wojcik, and PO Bilotti, and (6) the *Monell* claim (Count VI) against every defendant. D.E. 49.

After the close of discovery, the Hon. Leda D. Wettre granted Defendants leave to file the instant Motion. D.E. 79. Defendants then filed a motion for summary judgment, along with supporting papers, on December 9, 2024. D.Es. 90 & 91. Defendants also filed their reply to Plaintiff's opposition that day. D.E. 92. Plaintiff filed his opposition to Defendants' motion on December 10, 2024. D.E. 93. After the Court ordered Defendants to re-file their briefs to comply with the page limits set forth in Local Civil Rule 7.2, D.E. 94, Defendants requested a page limit extension for their briefs. D.E. 95. The Court granted Defendants' request to file overlength briefs. D.E. 96. Defendants subsequently filed a letter raising procedural deficiencies regarding

8

Plaintiff's filings, D.E. 98, after which the Court administratively terminated D.E. 90 and ordered the parties to re-file their summary judgment papers by January 6, 2025, D.E. 99.

On January 6, 2025, Defendants filed: (1) their Notice of Motion, D.E. 100; (2) their Motion, D.E. 100-1; (3) their SUF; (4) their proposed order on the Motion, D.E. 100-3; and (5) the First Afanador Cert., and exhibits thereto.[9]    Defendants also filed: (1) their Reply; (2) their Response to Plaintiff's Statement of Facts and Supplemental Statement of Undisputed Material Facts, D.E. 102-1 ("Defs. Resp. to Pl. SUF")[10]; and (3) the Certification of Victor A. Afanador, Esq. in Further Support of Motion, D.E. 102-2 ("Second Afanador Cert."), and exhibits thereto. Two days after the Court's January 6, 2025, filing deadline, Plaintiff then filed: (1) his Opposition;

---

[9] Defendants also filed a motion to seal portions of Exs. B, C, and E and the entirety of Exs. F–J, M, and O to the First Afanador Decl.  D.E. 97 ("Motion to Seal").  The Hon. Leda D. Wettre granted the Motion to Seal on February 5, 2025, ordering Defendants to file public redacted versions of all summary judgment exhibits within fourteen days.  D.E. 107.  Defendants have failed to do so.  As detailed in the accompanying Order, Defendants must file these public redacted versions within fourteen days of this Opinion and Order.  The Court also notes that because the parties have not filed under seal their briefs revealing much of the content of the sealed exhibits, the Court will not seal this Opinion.  Any party may, however, move to seal this Opinion as appropriate.

[10] Plaintiff did not file a statement of material facts in "a separate document (not part of a brief)" "in separately numbered paragraphs" as Local Civil Rule 56.1 requires if the opponent of summary judgment wishes "to substantiate the factual basis for opposition."  Instead, Plaintiff lists facts in a "Statement of Facts" in its Opposition brief, without numbered paragraphs.  *See* Opp. at 2–4. While Plaintiff's failure to properly submit a statement of material facts is sufficient basis for the Court to find that Plaintiff has not submitted any of its own facts in opposition to the Motion, the Court has nevertheless followed Defendants' lead in treating Plaintiff's "Statement of Facts" in its Opposition as Plaintiff's statement of material facts, *see* Defs. Resp. to Pl. SUF.  Moreover, Defendants don't have their hands clean with respect to the statements of material facts, either. Local Civil Rule 56.1 does not permit a summary judgment movant to submit an additional affirmative statement of material facts with its response to the opponent's statement of material facts and its Reply, as Defendants did, *see* D.E. 102-1 at 10–13.  *See Anyclo Int'l Inc. v. Cha*, No. 18-5759, 2021 WL 2110338, at *2 (D.N.J. May 25, 2021) ("Here, Plaintiff submitted a supplemental statement of undisputed material facts in its reply brief.  Because that supplemental statement was included in a reply rather than an opposition brief, there was no opportunity for Defendant to respond, as required by Rule 56.1(a).").  The Court therefore declines to consider "Defendants' Supplemental Statement of Undisputed Material Facts" (D.E. 102-1 at 10–13).

(2) Pl. Resp. to Defs. SUF; (3) the Igbokwe Decl., and (4) exhibits to the Igbokwe Decl., D.E. 104-3.

## III.    LEGAL STANDARD

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248).

The movant bears the initial responsibility to establish the basis for the motion for summary judgment and to identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party bears the burden of proof on an issue, the moving party's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the moving party has met its initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Under Rule 56, a court must view the evidence presented in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment," *Blair*, 283 F.3d at 608, as are unsworn statements in memoranda and unsupported statements in pleadings, *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).

## IV.    ANALYSIS

The Court reads Defendants' Motion as seeking summary judgment on the remaining claims in this action brought against them. While not clearly set forth in Defendants' Motion, the remaining claims against Defendants are as follows: (1) Plaintiff's false arrest claim (Count I) against PO Levine, PO Conboy, PO Wojcik, and PO Bilotti, (2) Plaintiff's false imprisonment claim (Count II) against PO Levine, PO Conboy, PO Wojcik, and PO Bilotti, (3) Plaintiff's unreasonable and excessive force claim (Count III) against PO Levine, (4) Plaintiff's malicious prosecution claim under Section 1983 (Count IV) against PO Levine, (5) Plaintiff's failure to supervise claim (Count V) against Sergeant Kimbro, (6) Plaintiff's substantive due process claim (Count VII) against PO Levine, (7) Plaintiff's procedural due process claim (Count VIII) against PO Levine, (8) Plaintiff's failure to intervene claim (Count IX) against Sergeant Kimbro, (9) Plaintiff's state law malicious abuse of process claim (Count X) under the NJCRA against PO Levine, and (10) Plaintiff's state law malicious prosecution claim (Count X) under the NJCRA against PO Levine.[11] *See supra* Section II; Compl.

---

[11] The Court agrees with Defendants that, while Plaintiff has brought a joint claim for "malicious abuse of process/malicious prosecution" (Count X), *see* Compl. ¶¶ 139–157, whether Defendants

For the reasons set forth below, the Court finds (1) that Plaintiff has abandoned his excessive force, substantive due process, and malicious abuse of process claims and (2) that Plaintiff has not met his burden to make a factual showing sufficient to establish the lack of probable cause required for Plaintiff's false arrest, false imprisonment, malicious prosecution, procedural due process, failure to supervise, and failure to intervene claims to survive summary judgment. Accordingly, Defendants are entitled to summary judgment on each of Plaintiff's remaining claims.

The Court further concludes that the Unidentified Officer Defendants should be dismissed from this action under Federal Rule of Civil Procedure 21.

### A. Plaintiff Has Abandoned His Excessive Force, Substantive Due Process, and Malicious Abuse of Process Claims

A plaintiff's "failure to respond to [a] defendant's arguments on summary judgment constitutes an abandonment of these causes of action . . . ." *Greene v. Elizabeth Police Dep't*, No. 18-8972, 2023 WL 6233124, at *5 (D.N.J. Sept. 26, 2023) (citation modified) (quoting *Brenner v. Twp. of Moorestown*, No. 09-219, 2011 WL 1882394, *11 (D.N.J. May 17, 2011)); *CareOne at Birchwood, LLC v. Twp. of Edison*, No. 22-7976, 2024 WL 1298902, at *18 (D.N.J. Mar. 27, 2024) (finding that plaintiffs had abandoned a Section 1983 claim when they did not respond to defendant's arguments regarding the claim, and accordingly granting defendant's motion for summary judgment on that claim); *Bernard v. Webb-McRae*, No. 17-7030, 2020 WL 1329934, at *2 (D.N.J. Mar. 23, 2020) (same).[12]

---

maliciously abused process and whether Defendants maliciously prosecuted Plaintiff must be analyzed separately as they are two different torts. *See* Mot. at 26 (citing *Garcia v. Lilleston*, No. A-2955-13T1, 2015 WL 2458018, at *2 (N.J. Super. Ct. App. Div. May 28, 2015)).

[12] *See also Player v. Motiva Enters., LLC*, 240 F. App'x 513, 522 n.4 (3d Cir. 2007) (holding that the district court had properly granted defendant's motion for summary judgment and rejecting

Defendants argue that Plaintiff has abandoned his excessive force, substantive due process, and malicious abuse of process claims. Reply at 12 n.4.[13] The Court agrees.

### 1. Excessive force

The Court first finds that Plaintiff has abandoned his excessive force claim. Plaintiff alleges that he was subjected to excessive force when PO Levine allegedly (1) placed Plaintiff in handcuffs that were too tight, (2) left Plaintiff in a hot patrol car for an extended period of time without ventilation, and (3) left Plaintiff unrestrained by a seatbelt during transport to the police station. *See* Compl. ¶ 76. In Defendants' Motion, they argue, *inter alia*, that (1) Plaintiff's bruising was insufficient to rise to the requisite level to be considered excessive force and that he did not comment on the handcuffs when he was PO Levine's vehicle, (2) the temperature on the day of the arrest did not leave Plaintiff exposed to unnecessary heat and that PO Levine accommodated Plaintiff's request to open a window in PO Levine's vehicle, and (3) that Plaintiff never told PO Levine that Plaintiff's seatbelt was not properly secured and that PO Levine complied with Plaintiff's request to slow down when driving. Mot. at 18–21. Defendants also argue that PO Levine is entitled to qualified immunity for Plaintiff's claims regarding his allegedly unsecured

---

plaintiffs' argument that the district court had not considered a particular claim after finding that plaintiffs did not mention the claim in response to plaintiffs' motion for summary judgment).

[13] Defendants also argue that Plaintiff has abandoned his procedural due process claim brought under the Fifth Amendment. *Id.* While it is true that Plaintiff did not specifically discuss this claim in his Opposition nor address Defendants' (correct) argument that the claim must be brought under the Fourteenth Amendment rather than the Fifth, Defendants nevertheless analyzed the claim as if it had been brought under the Fourteenth Amendment in their Motion and the claim involves the probable cause issue addressed extensively by Plaintiff in his Opposition. *See* Mot. at 24–25; *see generally* Opp. Accordingly, the Court declines to find that Plaintiff has abandoned his procedural due process claim and considers it alongside the other probable cause-related claims, *infra* Section IV.B. *See Long v. Bristol Twp.*, No. 10-1069, 2012 WL 2864410, at *4 n.5 (E.D. Pa. July 11, 2012) (finding at summary judgment that it was possible to infer that plaintiffs intended to base their procedural due process claims brought under the Fifth Amendment on the Fourteenth Amendment and therefore analyzing those claims as though they had been brought under the Fourteenth Amendment).

seatbelt and allegedly hot patrol vehicle because there is no clearly established right to a secure seatbelt or a temperature regulated car during transport. *Id.* at 35–37. Plaintiff's Opposition does not even reference his excessive force claims, much less refute any of Defendants' legal arguments or any of the evidence produced by Defendants. *See* Opp. And the only time Plaintiff even attempts to dispute a fact relevant to these claims—that Plaintiff did not ask PO Levine to loosen his handcuffs—in his materials opposing summary judgment, Plaintiff fails to show that the fact is actually disputed. *See supra* n.7.

Because Plaintiff has failed to sufficiently address Defendants arguments with respect to his excessive force claim, Plaintiff has therefore "failed to meet [his] burden of identifying specific facts showing a genuine issue as to" his excessive force claim. *Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014). The Court will accordingly **GRANT** summary judgment in favor of PO Levine and against Plaintiff on Count III (excessive force).

### 2. Substantive due process

Plaintiff has also abandoned the claim he brought alleging that his false arrest, false charges, and malicious prosecution violated his substantive due process rights under Section 1983 and the Fifth Amendment. *See* Compl. ¶¶ 123–29. Defendants argue that Plaintiff's claim is derived from the protection provided by the Fourth Amendment and therefore must be brought under the Fourth Amendment, not the Fifth Amendment. *See* Mot. at 23–24 (citing *Mills v. Golden Nugget Atlantic City, LLC*, No. 19-19610, 2021 WL 3667076, at *11 (D.N.J. Aug. 18, 2021) (granting defendant summary judgment on substantive due process claim relating to false arrest brought under the Fourteenth Amendment because plaintiff was required to bring it under the Fourth Amendment)). Once again, Plaintiff failed to address his substantive due process claim at all in his Opposition, much less respond to Defendants' argument that Plaintiff cannot bring a substantive due process claim under the Fifth Amendment, *see* Opp.—"thereby 'leading the Court

14

to conclude that he ha[s] abandoned' the claim and 'warranting its dismissal.'" *Greene*, 2023 WL 6233124, at *5 (quoting *Williams v. Lenape Bd. of Educ.*, No. 17-7482, 2020 WL 2111221, *19 (D.N.J. May 4, 2020)).  The Court will thus **GRANT** summary judgment in favor of PO Levine and against Plaintiff on Count VII (substantive due process).

         *3.*       *Malicious abuse of process*

The Court further finds that Plaintiff abandoned his malicious abuse of process claim.  As explained *supra* n.11, although Plaintiff has brought his state law malicious prosecution and malicious abuse of process against PO Levine in a single count (Count X), the two claims have materially different elements, and the Court therefore addresses them separately.  With respect to malicious abuse of process, Plaintiff alleges that his criminal prosecution was continued after PO Levine knew he had no probable cause for the arrest or initiation of the criminal prosecution.  Compl. ¶ 150.  Defendants argue in their Motion that this claim fails because Plaintiff has not adduced evidence that PO Levine performed further acts after initiating judicial process, as required to state an abuse of process claim under New Jersey law.  *See* Mot. at 27–28 (citing *Cresci v. Gyess*, No. 17-2342, 2018 WL 4961466, at *9 (D.N.J. Oct. 15, 2018), *aff'd sub nom. Cresci v. Gyss*, 792 F. App'x 226 (3d Cir. 2020)).  Plaintiff failed to address this argument or discuss his malicious abuse of process claim at all in his Opposition.  *See* Opp.  The Court will therefore **GRANT** summary judgment in favor of PO Levine and against Plaintiff on the malicious abuse of process claim set forth as part of Count X.  *See, e.g., Greene*, 2023 WL 6233124, at *6 (dismissing abuse of process claim at summary judgment on similar grounds).

**B.**    **Defendants Are Entitled to Summary Judgment on Plaintiff's False Arrest, False Imprisonment, Malicious Prosecution, Procedural Due Process, Failure to Supervise, and Failure to Intervene Claims**

Plaintiff has also brought false arrest, false imprisonment, malicious prosecution, procedural due process, failure to supervise, and failure to intervene claims under Section 1983,

as well as a malicious prosecution claim under New Jersey law.  *See* Compl.  As explained below, for these claims to survive summary judgment, Plaintiff must show—at minimum—that there is a genuine dispute as to whether his arrest for impersonating a police officer was supported by probable cause.  Because Plaintiff stipulated to probable cause for his arrest while pleading guilty the Failure to Keep Right Ticket, however, he is unable to make that showing.  The Court will therefore grant Defendants' Motion as to Plaintiff's false arrest, false imprisonment, malicious prosecution, procedural due process, failure to supervise, and failure to intervene claims.

*1.    Plaintiff has stipulated to probable cause for his arrest*

Defendants argue that Plaintiff stipulated to probable cause for his arrest at the time of his plea by failing to respond to their RFAs establishing that Plaintiff stipulated to probable cause. Mot. at 14; Reply at 1–3.  While the Court is loathe to resolve the critical issue of the existence of probable cause on the basis that Plaintiff failed to respond to Defendants' RFAs, the Court agrees with Defendants that it is appropriate to do so here.

Under Federal Rule of Civil Procedure 36, "[a] party may serve on any other party a written request to admit . . . the truth of . . . matters . . . relating to . . . facts, the application of law to fact, or opinions about either" and "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection address to the matter. . . ."  And, as the Third Circuit has explained:

> Matters deemed admitted due to a party's failure to respond to requests for admission are "conclusively established" under Federal Rule of Civil Procedure 36(b), and may support a summary judgment motion.  Rule 36(b) is intended to narrow the triable issues in the case.  An admission is therefore an "unassailable statement of fact" and is binding on the non-responsive party unless withdrawn or amended.

*Sec'y United States Dep't of Lab. v. Kwasny*, 853 F.3d 87, 91 (3d Cir. 2017).

Here, Defendants served the RFAs on Plaintiff on March 15, 2024.  Defs. SUF ¶ 41. Plaintiff never responded to the RFAs.  *Id.*  There is no evidence that Plaintiff ever sought an extension of time to respond.  The first—and only—time Plaintiff makes any reference to the existence of these RFAs is in his Response to Defendants' SUF, where he asserts that Defendants served the RFAs after the Hon. Leda D. Wettre closed discovery and therefore that Defendants were not entitled to responses.  Pl. Resp. to Defs. SUF ¶¶ 40–41.  But Plaintiff is mistaken that requests for admission may not be served or responded to after the close of discovery.  As the Third Circuit advised in affirming a district court's decision to deem admitted requests for admission for which the responses were due after the close of discovery, "[n]othing in [Federal Rule of Civil Procedure 36] provides that a party may ignore requests if the responses are due after the close of discovery."  *Shelton v. Fast Advance Funding, LLC*, 805 F. App'x 156, 158 (3d Cir. 2020).  The Third Circuit has further explained—in a precedential opinion—that:

> requests for admission typically come late in discovery, or even after discovery has been completed and trial is imminent.  If at that point a party is served with a request for admission of a fact that it now knows to be true, it must admit that fact, even if that admission will gut its case and subject it to summary judgment.  That is what Rule 36 was intended to do—narrow the issues for trial, or even altogether obviate the need for trial.

*Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992).

Plaintiff does not even attempt to rebut the caselaw demonstrating that "requests for admission are distinct from other discovery devices, and that a party can still be obliged to respond to a request for admission even after the close of discovery," *Shelton*, 805 F. App'x at 158.  In fact, Plaintiff does not mention this issue at all in his Opposition, despite Defendants arguing in their Motion that the RFAs related to probable cause should be deemed admitted and that deeming those admitted would be fatal to Plaintiff's case.  *See* Mot. at 14.  Because Plaintiff has failed to brief this issue, Plaintiff has also failed to point to any particular features of this case that militate

departing from the general rule that post-discovery requests for admission require responses. Indeed, while Plaintiff cites D.E. 61—the Hon. Leda D. Wettre's Amended Scheduling Order providing that fact discovery would be closed on January 30, 2024—when asserting in his Response to Defendants' SUF that the RFAs were served after the close of fact discovery, a review of D.E. 29—the initial scheduling order in the case, which sets forth more specific discovery deadliness—demonstrates that requests for admission were not considered part of fact discovery in this case. While D.E. 29 provides specific deadlines for interrogatories, requests for production of documents, and depositions, it does not mention requests for admission, much less provide deadlines for such requests.[14]   Accordingly, because there are no case-specific factors that warrant departing from the rule that post-discovery requests for admission require responses and because Plaintiff never responded to the RFAs, the Court deems Defendants' RFAs admitted under Federal Rule of Civil Procedure 36 due to Plaintiff's failure to respond to the RFAs.

And, despite many opportunities to do so, Plaintiff has never even raised the possibility of withdrawing the admitted RFAs. Plaintiff's failure to properly address the RFAs has tied the Court's hands. Although Federal Rule of Civil Procedure 36 expressly allows "the court, on motion, [to] permit[] the admission to be withdrawn or amended," the Third Circuit has held that "a district court errs when it withdraws admissions without any prompting by the parties." *Percella v. City of Bayonne*, No. 21-1504, 2022 WL 2207832, at *2 (3d Cir. June 21, 2022) (citing *Goodson v. Brennan*, 688 F. App'x 372, 375 (6th Cir. 2017) and *Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991)). In *Percella*, the Third Circuit was nevertheless careful to explain that "[w]hile Rule 36 does not authorize a district court to

---

[14] None of the other amended scheduling orders in this case mention requests for admission, either. *See* D.E.s 33, 39, 50, 53.

unilaterally withdraw or amend an admission, it does not specify the precise form a motion to withdraw or amend must take."  2022 WL 2207832, at *2.  District courts following the Third Circuit's guidance in *Percella* have accordingly considered requests to withdraw admissions sufficient to constitute a "motion" under Rule 36 where: (1) a party explicitly requested "withdrawal of the deemed admissions" in its opposition to summary judgment, *Owens v. IQ Data Int'l, Inc.*, No. 20-4099, 2022 WL 4225391, at *1 n.4 (E.D. Pa. Sept. 13, 2022) (quoting party's brief); (2) upon receipt of its opponent's motion for summary judgment using the party's failure to respond to requests for admission, the party served its responses to the requests for admission and filed a motion for extension of time to do so, *K.K.-M. v. New Jersey Dep't of Educ.*, No. 17-11579, 2023 WL 4551640, at *1 (D.N.J. July 14, 2023); and (3) a plaintiff explicitly stated in his response to a statement of material fact that, "[t]o the extent any Request for Admissions are deemed admitted, Plaintiff asks the Court to withdraw or amend the admissions" and analyzed the factors courts consider on motions to withdraw admissions, *Powers v. Se. Pennsylvania Transportation Auth.*, No. 19-4685, D.E. 68-1 ¶ 60  (E.D. Pa. June 25, 2022), and then the opposing parties "responded in substance to [the] request in their reply brief," *Powers*, 2023 WL 3569964, at *11 (E.D. Pa. May 18, 2023).

Here, Plaintiff has not taken any action that could possibly be construed as a request for the admissions in the RFAs to be withdrawn, much less a request sufficient to constitute a "motion" under Rule 36.  As explained *supra*, the first—and only—time Plaintiff made any reference to the existence of these RFAs was in his Response to Defendants' SUF, where he asserted that Defendants served the RFAs after the Hon. Leda D. Wettre closed discovery and therefore that Defendants were not entitled to responses.  Pl. Resp. to Defs. SUF ¶¶ 40–41.  Plaintiff did not even, in the alternative, request in his Response to Defendants' SUF that the RFAs be withdrawn,

as the plaintiff did in *Powers*, *see* No. 19-4685, D.E. 68-1 ¶ 60.  Nor did Plaintiff address at all in his Opposition Defendants' argument in their Motion that the RFAs related to probable cause should be deemed admitted and that deeming those admitted would be fatal to Defendants' case. *See* Mot. at 14.  Moreover, Plaintiff failed to take any action whatsoever with respect to the RFAs after Defendants devoted a page-and-a-half of its fifteen-page Reply to further arguing that the Court should deem the RFAs admitted and providing caselaw explaining that post-discovery requests for admission require responses.  *See* Dkt.; Reply at 1–3.  Placed on notice that RFAs deemed admitted could be fatal to many of his claims and faced with several opportunities and avenues to move for their withdrawal—or begin the process of doing so—in the eight months since the filing of Defendants' Motion and Reply (e.g., filing a formal motion to withdraw upon receipt of Defendants' Motion, making an explicit withdrawal request in his Opposition, making an explicit withdrawal request in his Response to Defendants' SUF, filing a formal motion to withdraw upon receipt of Defendants' Reply—or anytime thereafter, serving responses to the RFAs on Plaintiff and requesting an extension of time to respond, requesting a conference to discuss the issue, filing a letter to the Court, etc.), Plaintiff did nothing.  Accordingly, the Court finds that Plaintiff has not moved to withdraw the admission of the RFAs.  And, because the Court is not permitted to *sua sponte* withdraw the admission of the RFAs under Federal Rule of Civil Procedure 36, the Court further concludes that the admissions have not been withdrawn.

So, the Court must treat the admissions as "an unassailable statement of fact that narrows the triable issues in the case" and "not merely another layer of evidence, upon which the . . . [C]ourt can superimpose its own assessment of weight and validity."  *Airco Indus. Gases, Inc. Div. of the BOC Grp., Inc. v. Teamsters Health & Welfare Pension Fund of Philadelphia & Vicinity*, 850 F.2d 1028, 1036–37 (3d Cir. 1988).  The admitted RFAs on which the Court relies in this Opinion are

described in further detail *supra* Section I.B, but the most critical admitted fact is that as part of an October 20, 2020, plea agreement resolving Plaintiff's Failure to Keep Right Ticket, Safety Gass Requirement Ticket, and Revised Impersonation Complaint-Summons, Plaintiff stipulated before the municipal court to probable cause with respect to the Revised Impersonation Complaint-Summons.  RFAs No. 10–13.

> 2.  *Plaintiff's false arrest, false imprisonment, malicious prosecution, procedural due process, failure to supervise, and failure to intervene claims all fail because he cannot show that Defendants lacked probable cause to arrest him*

Plaintiff's stipulation to probable cause with respect to the Revised Impersonation Complaint-Summons is fatal to his false arrest, false imprisonment, malicious prosecution, procedural due process, failure to supervise, and failure to intervene claims.   Defendants are therefore entitled to summary judgment on each of those claims.

> a.    False arrest, false imprisonment, and malicious prosecution

As Plaintiff concedes, his false arrest, false imprisonment, and malicious prosecution claims all require that he prove that Defendants lacked probable cause to arrest him for impersonating a police officer.  *See* Opp. at 5; *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) ("False arrest and false imprisonment claims will necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.") (citation modified); *Est. of Smith v. Marasco*, 318 F.3d 497, 522 (3d Cir. 2003) ("[T]here was probable cause for arrest.  Because initiation of the proceeding without probable cause is an essential element of a malicious prosecution claim, summary judgment in favor of the defendants was appropriate on this claim."); *Carson v. Aurand*, 837 F. App'x 121, 123 (3d Cir. 2020) ("To make a claim for malicious prosecution under both federal and [New Jersey] state law, [the plaintiff] must show, among other things, that [the police detective defendant] initiated the proceeding against him without probable

21

cause.") (citing *Allen v. N.J. State Police*, 974 F.3d 497, 502 (3d Cir. 2020) (federal law) and *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000) (state law)).

Defendants have established that there was probable cause to arrest and charge Plaintiff for impersonating a police officer based on Plaintiff's stipulation to probable cause with respect to the Revised Impersonation Complaint-Summons. [15] As such, Plaintiff cannot show a genuine dispute as to probable cause—an essential element of his false arrest, false imprisonment, and malicious prosecution claims—and those claims must therefore fail as a matter of law. *See Meleika v. City of Jersey City*, No. 17-1959, 2018 WL 4522046, at *6 (D.N.J. Sept. 21, 2018) ("[M]alicious prosecution requires lack of probable cause; the defendant stipulated on the record that there was probable cause; a malicious prosecution claim therefore cannot be maintained."); *Ramon v. Stone*, No. 18-1640, 2023 WL 3092189, at *5 (D.N.J. Apr. 26, 2023) (finding that no genuine dispute of material fact existed as to false arrest claim where plaintiff had stipulated to probable cause in municipal court through his attorney); *Browner v. Kohl's Dep't Stores, Inc.*, No. A-3232-08T1,

---

[15] The Court notes that the RFA regarding probable cause that the Court has deemed admitted simply reads: "On October 20, 2020, you stipulated to probable cause with respect to Complaint – Summons 0288-S-2020-000056 before the municipal court." RFA No. 13. The RFA therefore does not specifically reference the Revised Impersonation Complaint-Summons signed by the municipal court judge where the Impersonating a Police Officer in violation of N.J. Stat. Ann. § 2C:28-8B charge was listed as the "Original Charge" and Impersonating a Public Servant in violation of N.J. Stat. Ann. § 2C:28-8A was listed as the "Amended Charge." Because the RFA as admitted references encompasses both the Initial and Revised Impersonation Complaint-Summons, the Court must find that Plaintiff has stipulated to probable cause as to both the original charge (Impersonating a Police Officer) and the amended charge (Impersonating a Public Servant). In any event, however, even if Plaintiff had only stipulated to probable cause as to the Impersonating a Public Servant charge, the Court finds that said stipulation would bar his false arrest and false imprisonment claims. *Cf. Ferry v. Barry*, No. 12-9, 2012 WL 4339454, at *5 (D.N.J. Sept. 19, 2012) ("Here, Plaintiff's guilty plea to the amended charge under Winslow Township's loitering ordinance—which arose out of the events at his home on July 30, 2010 and the initial charge of obstructing administration of law—directly contradicts Plaintiff's assertion that no probable cause existed for his arrest.").

2010 WL 3258263, at *5 (N.J. Super. Ct. App. Div. Aug. 19, 2010) (holding that, due to a stipulation of probable cause, "there was no 'absence of probable cause' to prosecute" and accordingly affirming trial court's order dismissing state law malicious prosecution claim); *Jenkins v. Louisville-Jefferson Cnty. Metro Gov't*, No. 17-151, 2018 WL 345119, at *3 (W.D. Ky. Jan. 9, 2018) ("[A] stipulation of probable cause in an underlying criminal proceeding bars subsequent claims for unlawful search, false arrest, false imprisonment, and malicious prosecution [under § 1983]." (citation modified)).[16]

The Court will therefore **GRANT** summary judgment in favor of PO Levine, PO Conboy, PO Wojcik, and PO Bilotti and against Plaintiff on Count I (false arrest) and Count II (false imprisonment). The Court will also **GRANT** summary judgment in favor of PO Levine and against Plaintiff on Count IV (malicious prosecution under Section 1983) and on the state law malicious prosecution claim set forth as part of Count X.[17]

---

[16] Because the Court finds that Plaintiff's stipulation to probable cause bars his false arrest, false imprisonment, and malicious prosecution claims, it need not address Defendants' argument that, due to Plaintiff's guilty plea to the Failure to Keep Right Ticket, *Heck v. Humphrey*, 512 U.S. 477 (1994) also bars those claims. *See* Mot. at 5–6. The Court, however, notes that it is unclear: (1) whether Plaintiff's guilty plea to a municipal traffic offense could even give rise to a *Heck* bar because *Heck* applies to criminal convictions, *see Knox v. City of Royal Oak*, No. 06-10428, 2006 WL 3825069, at *3 (E.D. Mich. Dec. 26, 2006); *Vickey v. Nessler*, 230 N.J. Super. 141, 149 (App. Div. 1989) (explaining that cases involving traffic offenses are not criminal cases); and (2) if *Heck* were to apply, whether a judgment in favor of Plaintiff on his claims based on his arrest for impersonating a police officer would in fact imply the invalidity of his conviction for failure to keep right as required for *Heck* to bar Plaintiff's claims, *see Henley v. Payne*, 945 F.3d 1320, 1327–28 (11th Cir. 2019) (finding that Heck did not act as a bar because the offense for which plaintiff pled guilty did not "derive[] from a common nucleus of operative fact with the offense underlying his § 1983 claim").

[17] For the avoidance of doubt, by granting summary judgment in favor of PO Levine on the malicious prosecution claim set forth as part of Count X as well as on the malicious abuse of process claim set forth as a part of Count X, *see supra* IV.A.3, the Court is granting summary judgment in favor of PO Levine on Count X in its entirety.

b.    <u>Procedural due process</u>

Plaintiff alleges that his procedural due process rights arising under the United States Constitution and the New Jersey Constitution were violated because (1) he was arrested and prosecuted without a warrant and without probable cause, and (2) even if there were probable cause, a warrantless arrest and continued prosecution of Plaintiff were improper.  Compl. ¶ 131. Both his federal and state constitutional claims fail.

As explained *supra* n.13, while Defendants are correct that Plaintiff's federal procedural due process claim was improperly brought under the Fifth Amendment—which does not apply to state officials, *Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013) (citing *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir.1983))—the Court will construe it as though brought under the Fourteenth Amendment.  Construing the claim as though brought under the Fourteenth Amendment does not save it from dismissal, however.  The Court finds that Plaintiff's procedural due process claim brought under Section 1983, like his substantive due process claim, is "more properly analyzed under the Fourth Amendment rather than procedural due process." *Posey v. Swissvale Borough*, No. 12-955, 2013 WL 989953, at *15 (W.D. Pa. Mar. 13, 2013). While the Third Circuit has not specifically addressed whether *procedural* due process claims like Plaintiff's—rather than *substantive* due process claims—are barred by the rule "that when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate," *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000), numerous other courts in this Circuit have applied this rule to dismiss *procedural* due process claims based on false arrest and/or malicious prosecution claims.  *See, e.g.*, *Posey*, 2013 WL 989953, at *15 (analyzing plaintiff's claim "that he was arrested without probable cause, and that the police did not conduct a sufficient investigation before charging him" under the Fourth Amendment and dismissing

24

because it had already found that there was probable cause to initiate criminal proceedings against him); *Swedron v. Borough*, No. 08-1095, 2008 WL 5051399, at *6 (W.D. Pa. Nov. 21, 2008) ("[A]s 'the gravamen' of his lawsuit is so clearly premised on a . . . Fourth Amendment violation based upon his alleged malicious prosecution and arrest without probable cause, the Court will dismiss the procedural due process claim along with the substantive due process claim."); *Crouse v. S. Lebanon Twp.*, 668 F. Supp. 2d 664, 674 (M.D. Pa. 2009) ("A procedural due process claim is . . . an inappropriate vehicle by which to seek vindication for a purportedly unlawful arrest."). Moreover, the Third Circuit has explained that "while some false arrest claims might be subject to a [procedural] due process analysis," "the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis." *Berg*, 219 F.3d at 269.

Because the Court finds that Plaintiff's federal procedural due process claim is subsumed by the Fourth Amendment false arrest, false imprisonment, and malicious prosecution claims the Court has dismissed for failure to establish lack of probable cause and because "Plaintiff has articulated no basis for a procedural due process claim separate and apart from those actions underlying his Fourth Amendment claims," *Meketa v. Kamoie*, 955 F. Supp. 2d 345, 366 (M.D. Pa. 2013), summary judgment for Defendants is warranted on Plaintiff's federal procedural due process claim.

Summary judgment for Defendants is also warranted on Plaintiff's procedural due process claim brought under the NJCRA for deprivation of his rights secured by the New Jersey Constitution because "Section 1983 provides remedies for the deprivation of both procedural and substantive rights while [the NJCRA] provides remedies only for the violation of *substantive* rights." *Tumpson v. Farina*, 218 N.J. 450, 477 (2014) (emphasis added).

Accordingly, the Court will **GRANT** summary judgment in favor of PO Levine and against Plaintiff on Count VIII (procedural due process).

c.    Failure to supervise and failure to intervene

Because Plaintiff has not established an underlying constitutional violation, *see supra* Section IV.A–B.2.b, Plaintiff's failure to supervise and failure to intervene claims must also fail as a matter of law.  *See White v. City of Vineland*, 500 F. Supp. 3d 295, 305–06 (D.N.J. 2020) ("To be liable under a failure to intervene theory, *the plaintiff must have demonstrated that his underlying constitutional rights were violated*, that the officer had a duty to intervene, and that the officer must have had a realistic and reasonable opportunity to intervene." (emphasis added) (citing *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002)); *Ramon*, 2023 WL 3092189, at *9 (granting summary judgment to defendants after finding "no genuine issue of material fact as to whether the named officers failed to intervene" where plaintiff had failed to raise a genuine issue of material fact as to the underlying constitutional violation); *Coleman v. City of Long Branch*, No. 15-7314, 2018 WL 4027033, at *10 (D.N.J. Aug. 22, 2018) (summary judgment for defendants on failure to supervise claim was appropriate because the court "ha[d] already found that there [was] insufficient evidence to find that [plaintiff's] underlying constitutional rights were violated, [so] supervisory liability c[ould not] be imposed against either the [c]ity or any of the named officers for their role in the same.").  The Court will therefore **GRANT** summary judgment in favor of Sergeant Kimbro and against Plaintiff on Count V (failure to supervise) and Count IX (failure to intervene).

**C.    The Court Will Dismiss the Unidentified Defendants**

The Court will also dismiss the Unidentified Defendants from this matter.  Under Federal Rule of Civil Procedure 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  A plaintiff may use John Doe defendants "until reasonable discovery permits

the true defendants to be identified." *Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir. 2009). But "[i]f reasonable discovery does not unveil the proper identities, . . . the John Doe defendants must be dismissed." *Id.* Here, "discovery was commenced over three years ago, *see* D.E. [22], and Plaintiff still has not identified the fictitious defendants or provided evidence as to how they were involved in this matter." *Miles v. City of Jersey City*, No. 14-5492, 2018 WL 4005742, at *10 (D.N.J. Aug. 22, 2018); *see Adams v. City of Camden*, 461 F. Supp. 2d 263, 271 (D.N.J. 2006) ("After a year of discovery and motion practice, Plaintiff has failed to identify these defendants or provide any evidence of their liability for the claims raised in the Complaint."); *see also Blakeslee*, 336 F. App'x at 250 (affirming dismissal of fictitious defendants under Rule 21 where plaintiff "had approximately ten months of discovery to allow her to identify the individual John Doe defendants"). Accordingly, the Court will **DISMISS** the Unidentified Defendants from this action **with prejudice**.

## V.    INACCURACIES IN PLAINTIFF'S BRIEF

Having concluded its discussion of the merits of Plaintiff's case and Defendants' Motion, the Court must now, regrettably, go on to address some concerns with Plaintiff's Opposition. In reviewing Plaintiff's Opposition, the Court independently identified multiple inaccurate quotations and citations.[18] While these inaccuracies vary in severity, they appear in nearly half of the pages of Plaintiff's Opposition. And, when considered together, these inaccuracies give rise to concerns that the brief was prepared without adequate diligence—and possibly using generative artificial

---

[18] The Court does not fault Defendants for failing to highlight these issues in their Reply. The Court first became aware of a major inaccuracy in Plaintiff's Opposition when attempting to review a case using one of the false Westlaw citations from Plaintiff's Opposition. As Defendants use Lexis—rather than Westlaw—citations throughout their briefing, *see, e.g.*, Reply at 7, they likely did not have occasion to spot the false Westlaw citations that lead this Court to closely scrutinize each of Plaintiff's citations.

intelligence ("GAI") without proper verification—in violation of Federal Rule of Civil Procedure 11, Section I.B of the undersigned's judicial preferences, and the New Jersey Rules of Professional Conduct ("NJRPC").

A sampling of the inaccuracies in Plaintiff's Opposition is set forth below, each organized under the heading of the proper case citation:

- *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345 (3d Cir. 2003):  Plaintiff writes, "However, it is by no means apparent as a matter of law that this conversation alone demonstrated a 'substantial chance of criminal activity on the [Plaintiff's] part.' *Camiolo*, 334 F.3d at 363." Opp. at 23 (emphasis added).  But the language Plaintiff quotes does not appear in *Camiolo*, a precedential (and binding) Third Circuit case.  Instead, the quoted language, along with the rest of the sentence after the word "However," appears verbatim in a non-binding case from this District that Plaintiff cites elsewhere in his brief: *Frohner v. City of Wildwood*, No. 07-1174, 2008 WL 5102460, at *7 (D.N.J. Dec. 1, 2008). *Frohner*, in turn, states, "it is by no means apparent as a matter of law that this conversation alone demonstrated a 'substantial chance of criminal activity on the suspect's part.' *Mounts*, 248 F.3d at 715 . . . ." *Id.* (emphasis added).  *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001) is an out-of-circuit case that is itself elsewhere cited in Plaintiff's Opposition.  In short, it appears that Plaintiff has taken a sentence from a non-binding District of New Jersey case quoting a similarly non-binding Seventh Circuit case and attributed the quoted material from that non-binding Seventh Circuit case to a binding Third Circuit case (and failed to quote, or cite at all, the rest of the material coming directly from the non-biding District of New Jersey case).

- *Gilles v. Davis*, 427 F.3d 197, 205 (3d Cir. 2005):  Plaintiff writes, " . . . '<u>whether there was any reasonable basis to suppose there was probable cause,</u>' which precludes the entry of summary judgment on this record.  *Gilles*, 427 F.3d at 205."  Opp. at 23 (emphasis added).  While this time the language Plaintiff attributes to the binding Third Circuit case, *Gilles*, does appear in that case, it appears only in a parenthetical to a "*see also*" cite to a Seventh Circuit case: ". . . *see also Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004) ('<u>whether there was any reasonable basis to suppose there was probable cause</u> . . . is the test for qualified immunity')."  *Gilles*, 427 F.3d at 205 (emphasis added).  Plaintiff fails to even include a parenthetical noting that the citation to *Gilles* had been modified in any respect, must less note that the quoted language it attributes to the Third Circuit *Gilles* is in fact a quotation from a Seventh Circuit case the Third Circuit included in a parenthetical.

- *Manitta v. New Jersey*, No. 13-420, 2014 WL 6908459 (D.N.J. Dec. 8, 2014):  Plaintiff writes, "Similarly, in *Manitta v. New Jersey*, the plaintiff specifically stipulated to probable cause during the plea hearing.  *Manitta v. N.J.*, <u>No. 15-2870</u>, <u>2016</u> WL <u>609476</u>, at *3 (D.N.J. <u>Feb. 16, 2016</u>)."  Opp. at 19 (emphases added).  While this case does exist and Plaintiff's assertion about the probable cause stipulation is factually correct, the case number, Westlaw citation, and date of decision are all completely inaccurate.  The correct case number is <u>13-420</u>, not <u>15-2870</u>; the correct Westlaw citation is <u>2014</u> WL <u>6908459</u>, not <u>2016</u> WL <u>609476</u>; and the correct date of decision is <u>Dec. 8, 2014</u>, not <u>Feb. 16, 2016</u>— in fact, the case was closed in 2014.

- *Piazza v. Lakkis*, No. 11-2130, 2012 WL 2007112 (M.D. Pa. June 5, 2012):  Plaintiff writes, "The judgment must indicate the plaintiff's innocence of the alleged misconduct underlying the offenses charged. . . . *Piazza v. Lakkis*, No. 3:11-cv-2130, 2012 WL

2042671, at *31 (M.D. Pa. June 5, 2012)." Opp. at 16 (emphases added). While this case does exist and stands for the proposition for which Plaintiff cites it, Plaintiff completely misstates the Westlaw citation and the page number. The correct Westlaw citation is 2012 WL 2007112 and the Westlaw citation Plaintiff includes does not exist. Moreover, the material supporting the proposition for which Plaintiff cites the case appears not on page 31, but on pages 9–10. In fact, the page cited by Plaintiff does not exist because the opinion is only 13 pages.

- *Ianuale v. Keyport Twp.*, No. 15-8256, 2016 WL 5955527 (D.N.J. Oct. 13, 2016): Plaintiff writes, "In *Ianuale v. Keyport Twp.*, the plea agreement included explicit handwritten amendments acknowledging probable cause and waiving civil action. *Ianuale v. Keyport Twp.*, No. 15-8256, 2016 WL 6043804, at *8 (D.N.J. Oct. 13, 2016)." Opp. at 18–19 (emphases added). While this case does exist and stands for the proposition for which Plaintiff cites it, Plaintiff completely misstates the Westlaw citation and the page number. The correct Westlaw citation is 2016 WL 5955527 and the Westlaw citation Plaintiff includes does not exist. Moreover, the material supporting the proposition for which Plaintiff cites the case appears not on page 8, but on page 3.

- *State v. Gandhi*, 201 N.J. 161, 989 A.2d 256 (2010): Plaintiff writes, "In fact the Model Code Commentaries, makes clear the 'official authority' referenced in the statute is not 'the power of law enforcement officers to make arrests, to seize, and to search.' *See State v. Gandhi*, 989 A.2d 256, 176 (N.J. 2010)." Opp. at 10. The first issue with this citation is that Plaintiff cites to one reporter and then uses the page number from another reporter for a pincite. This issue, though it makes it more difficult for the Court to identify the relevant material (and being something that Plaintiff does numerous times in his brief), is

not a major cause for concern. The primary issue is that *Gandhi* does not in fact discuss the statute Plaintiff is interpreting. Instead, *Gandhi* stands for the general proposition that a court should first look to the plain language of a statute in construing that statute. *See* 201 N.J. at 176. It is therefore misleading for Plaintiff to cite *Gandhi* without further explaining that *Gandh*i supports the specific proposition regarding a specific statute for which Plaintiff cites the case not because it interprets that specific statute, but—rather— only because it explains a general canon of statutory interpretation.

This Court is not generally in the business of quibbling with a party's citations, but the nature and pervasiveness of these inaccuracies—misstatements of the cases in which quotations appear, Westlaw citations, decision dates, docket numbers, pincites, and legal holdings—have forced the Court's hand. These cumulative inaccuracies raise a significant concern that the brief was not properly reviewed for accuracy and may have been prepared using GAI without proper review, in violation of Federal Rule of Civil Procedure 11, the undersigned's judicial preferences, and the NJRPC. Accordingly, as detailed in the Order accompanying this Opinion, the Court will **ORDER** Plaintiff's counsel—O. Williams Igbokwe, Esq. (admitted *pro hac vice* to this Court) and Dean Maglione, Esq. (local counsel)[19]—**TO SHOW CAUSE** why the conduct described herein has not violated Federal Rule of Civil Procedure 11, Section I.B of the undersigned's judicial preferences regarding the use of GAI, and the NJRPC.

---

[19] The Court notes that Plaintiff's Opposition is signed only by Mr. Igbokwe, Opp. at 27, in violation of Local Civil Rule 11.1, which requires "that the attorney of record who is a member of the bar of this Court shall sign all papers submitted to the Court or filed with the Clerk." The brief was, however, filed by Mr. Maglione, *see* Dkt., who—along with Mr. Maglione's law firm— "agree[d] to be held responsible for Mr. Igbokwe," D.E. 32-1. In any event, Federal Rule of Civil Procedure 11(b) imposes obligations on filers of briefs as well as signatories thereto.

VI.    **CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Defendants' Motion for summary judgment and **DISMISS** the Unidentified Defendants from this action ***with prejudice***.    An appropriate Order follows.

Dated:  September 25, 2025

Evelyn Padin, U.S.D.J.